In the Matter of the Construction of the Will of HELEN S. EVERSON, Deceased.

JOHN J. EVERSON et al., Appellants; FIRST TRUST & DEPOSIT COMPANY, as Executor and Trustee under the Will of HELEN S. EVERSON, Deceased, Respondent.

Fourth Department, November 15, 1944.

Norman M. Pinsky (*Victor Levine* of counsel), for appellant Jessie Brown Bennett.

*Murphy & Young* (*John C. Young* of counsel), for petitioner-appellant.

*Farnham & Martineau* (*John H. Farnham* of counsel), for appellant Olive Brown Bailey.

*George M. & Alfred W. Haight* (*H. Duane Bruce* of counsel), for respondent First Trust & Deposit Company, as executor and trustee.

*Nathaniel L. Goldstein, Attorney-General; Orrin G. Judd, Solicitor-General* (*Thomas Burke* and *A. W. Feinberg, Assistant Attorneys-General,* of counsel), for unknown beneficiaries of an educational trust.

LARKIN, J. The testatrix, Helen S. Everson, having no relatives nearer than first cousins, the three appellants, died in the city of Syracuse in March, 1941, at the age of 82. She had

always lived in Syracuse. She never married. After the death of her parents she and her brother, who was a bachelor, lived in the family homestead in Syracuse. After his death, in October, 1925, she lived alone until her death. The three cousins were nonresidents of Syracuse, Olive Brown Bailey living in Florida, Jessie Brown Bennett in Chautauqua County, N. Y., and John J. Everson in Akron, Ohio. These three, in the event that Miss Everson died intestate as to the whole or any part of her estate, would be the distributees of such intestacy. Her will was executed April 12, 1927. It was republished by a codicil dated March 5, 1929, which merely changed the fiduciary.

The record establishes quite effectually that both Miss Everson and her brother, Charles B. Everson, were much interested in art, with even more interest on her part than manifested by her brother. She was particularly interested in the " Syracuse Museum of Fine Arts ", an eleemosynary institution located in that city and maintaining a public art gallery. She frequently visited the Museum and through its director, one of her very close friends who is a legatee named in her will, she kept well informed as to its activities. Her will, a perfectly ordered one, after directing the payment of her debts and funeral expenses, from the second to the twelfth clause, makes bequests to relatives, friends, household servants and employees. In the sixth clause, to her cousins, Jessie Brown Bennett and Olive Brown Bailey, she gave each the sum of $5,000, and in the fifth clause she gave to the petitioner herein, John J. Everson, the sum of $1,000. The record indicates that she did not maintain any close relationship with them. In these eleven paragraphs the total amount of her gifts was approximately $23,000. In paragraphs thirteen to sixteen the will gave to various specific charities in the city of Syracuse $10,500 more. The testatrix having then disposed of approximately $34,000 of her property in private benefactions, in the seventeenth clause, made disposition of the residue of $1,000,000, approximately, in the following language: " Seventeenth.— All the rest of my property, both real and personal, I give, devise and bequeath to my executors hereinafter named, in trust, for the purpose of founding, erecting and maintaining a Museum of Art to be known as ' Everson Museum of Art ' to be located in the City of Syracuse, New York. Said trustees may in their discretion at any time organize a corporation for the perpetual management and control of said ' Museum of Art ' and transfer

to it all the property in their hands as such trustees and then be discharged. Said trustees may also in their discretion, transfer and turn over the property and trust funds coming into their hands as such trustees to any corporation or association organized for a like purpose, on such conditions as said trustees deem proper, provided said trustees are assured that the purpose for which such corporation or association is organized is substantially the same as herein intended. My executors shall not be required to give any bonds as trustees under this clause of my will. I give and grant to said trustees and their successors, full power to sell and convey any and all of my property, both real and personal passing under this clause of my will.''

After the will was admitted to probate, without contest, the cousin, John J. Everson, began this proceeding for the construction and determination of the validity and effect of this seventeenth paragraph, claiming that the attempted trust therein created was void because it contravened section 12 of the Personal Property Law and section 113 of the Real Property Law. The other two cousins have joined in asking the same construction. In the course of the proceeding oral testimony was taken. However when that is analyzed it, in substance, insofar as it might be favorable to the contestants, may be deemed to establish that in her lifetime Miss Everson had on a number of occasions stated that the Syracuse Museum of Fine Arts was not her conception of a museum of art, because there it was the practice to teach very young children, and that, despite the fact that testatrix thought this was in all respects proper, it had no place in an art museum. The interest of Miss Everson and her brother in art, and the fact that both were interested in the Syracuse Museum of Fine Arts were clearly established by this testimony.

The grounds urged for a decision that the seventeenth paragraph of the will is void, are:

*First.* That it is not a true charitable trust, because not clearly intended for the benefit of the public.

*Second.* That even if it were intended as a trust for the benefit of the public, still it was not within the provisions of either the Personal Property Law or Real Property Law in reference to charitable trusts, because it is not educational in character.

The Surrogate made a decree and order which determined that the clause in question creates a valid trust for educational, charitable and benevolent uses within the meaning of section

12 of the Personal Property Law and section 113 of the Real Property Law, and that the paragraph is valid in all of its provisions. From that decree and order petitioner and the other two cousins appealed to this court. On the application of the Attorney-General this court made him a party to the appeal because, by subdivision 3 of section 12 of the Personal Property Law, and by subdivision 3 of section 113 of the Real Property Law, in the case of charitable trusts, it is the duty of the Attorney-General to represent the unknown beneficiaries. He has filed a brief on this appeal asking that the decree and order of the Surrogate be affirmed.

The first question to be determined is whether this will evidences a testamentary purpose to create a valid charitable trust for the public benefit, and not a private or personal trust for pecuniary gain or for limited private benefit. On this particular question petitioners insist that there is nothing to prevent the trustees from making use of the trust fund for profit. It is also urged that there is nothing to indicate but that the testatrix intended merely to erect a building marked " Everson Museum of Art ", with no provision for making it a repository of works of art, and that such a building could be kept closed to the public and remain simply a monument to perpetuate the Everson name.

To argue that the seventeenth clause of this will, even considering the language alone, can be interpreted as merely requiring the executor to erect a building with no requirement to place therein works of art, and with no obligation to make the use free to the public, and that its purpose is not charitable at all, but simply to perpetuate the Everson name, loses sight, insofar as it contemplates a mere building unequipped with works of art, of the meaning of the words " Art Museum." While it is true that, in a restricted sense, a building to house works of art might be considered an " Art Museum ", still the common interpretation of the term is a building which contains works of art. Again, contestants give no force to the language " for the purpose of *founding, erecting* and *maintaining* a Museum of Art * * * in the City of Syracuse," etc. Such language, at least to the ordinary person, shows clearly an intention not only to erect a building, but also to have placed therein objects of art. No other reasonable intendment can be given to this language. It seems absurd to say that testatrix merely intended a building designed as an art museum which should remain empty. Such a construction is repugnant to the oral testimony which indicates con-

clusively that testatrix was very much interested in art. Therefore, to draw from this language the conclusion that, by it, she ever intended only the erection of a bare building, seems rather far-fetched. Moreover it is not so clear that a building devoted to a general public use for exhibiting works of art, procured by donation or loan, would not constitute a valid charity. This identical question was raised in *Parsons* v. *Childs* (345 Mo. 689, certiorari denied 310 U. S. 640). On page 696 the opinion of the Missouri court is as follows: " The all-important problem which confronts us is to determine the intention of the testatrix as disclosed by her will. Appellants say she provided for the purchase of a site and the erection of a building only, without providing for works of art or for maintenance. Appellants have not convinced us that a provision for purchase of works of art is essential to the validity of the trust. We see no reason why a building devoted to general public use in exhibiting works of art, procured by donation or loan, would not constitute a valid charity. [*Old Colony Trust Co.* v. *O. M. Fisher Home (Mass.),* 16 N. E. (2d) 10.] " Same case 301 Mass. 1. In connection with this phase of their argument appellants urge that the real motive of the gift was to perpetuate the Everson name. The fact that a charity is also intended as a private memorial does not impair its public character or legal validity. (*Jones* v. *Habersham,* 107 U. S. 174, 189.) The courts are not concerned with the motive of the creator of the trust, but only with the question of the benefits that will accrue to the public.

Nor is there much force to the suggestion that the trust is not for the benefit of the public. Certainly this well-ordered will which after directing the payment of debts, then, in order, gives legacies to relatives and friends, and then to specific charities, and having done so, creates a trust of practically all of her estate for the erection of an art museum in the city of Syracuse, can hardly be said, considering only its orderly arrangement, to suggest other than a charitable use in the disposition made of the residuary estate. If there were nothing else than the will itself, it would seem almost unreasonable to conclude that the intention of the testatrix in creating the trust was other than a desire on her part to benefit the community in which she had always lived. The oral testimony fortifies this conclusion. Testatrix was apparently a refined, cultured woman much interested in art. She had given liberally to the Syracuse Museum of Fine Arts in her lifetime. Adding these factors to the language and structure of the will itself, the natural

suggestion of the seventeenth clause is that the testatrix intended thereby to create a trust for the benefit of the public generally. It seems quite evident that insofar as the seventeenth paragraph of the will is attacked on the theory that the use is not a true charitable one because it does not contemplate a public use, the objection cannot be sustained.

The other aspect of the first objection is that under the language used there is nothing to indicate but that a private or personal trust for pecuniary gain was intended. In support of this claim reliance is placed upon *Matter of Shattuck* (193 N. Y. 446). While it is true that the *Shattuck* case has not been expressly overruled, still the statement found in *Matter of Browning* (165 Misc. 819, 828, affd. without opinion 254 App. Div. 843, affd. 281 N. Y. 577): " The decision in the *Shattuck* case has been kept in a kind of isolation ward " is fully warranted. The *Shattuck* decision is well analyzed in *Matter of Skuse* (165 Misc. 554, 557) as follows: " * * * The difference between *Matter of Shattuck* and certain earlier cases, on the one hand, and the modern doctrine respecting the subject, on the other, lies largely in the method of approach. Formerly, if a *possibility* of use for private gain could be discerned under the language of the will the trust was deemed invalid and noncharitable. Now, however, the theory applied is that the [testator's] ' language should be construed in a broad and liberal spirit in accordance with his intention and the gift upheld, although the will may be susceptible of a construction which would permit the gift to be used for private or secular purposes,' provided ' a definite charitable purpose may be found within the limits of a testator's language.' *Matter of Durbrow,* 245 N. Y. 469, 474." The most that can be said in favor of this claim of these appellants is that the language of the will could possibly be construed as permitting the use of this fund for private gain. The difficulty with such an argument is that nowhere in the will is there a suggestion of any such intention. The testatrix was intelligent. Had she wished to set up a trust from which money was to be made, undoubtedly she would have mentioned someone to whom the profits should be paid. Surely she did not intend to die intestate, because she had already remembered the relatives who would be her distributees in case of intestacy. Bearing in mind, then, the whole framework of the will, and again using the oral testimony, it seems patent that the main object of this trust was to provide a fund to be devoted to a public use. Such a construction is more reasonable than a holding

that a trust for private gain or benefit was sought to be created. Such a ruling is in accord with *Matter of Robinson* (203 N. Y. 380, 388); *Matter of Cunningham* (206 N. Y. 601, 607); *Butterworth* v. *Keeler* (219 N. Y. 446, 450); *Matter of Frasch* (245 N. Y. 174, 183); *Matter of Durbrow* (245 N. Y. 469, 475). In all of these cases last cited the narrow scope of the *Shattuck* case is clearly indicated.

From the foregoing it is evident that insofar as the seventeenth paragraph is attacked, on the theory that the use is not a charitable one, the objection cannot be sustained.

The second ground of attack is that assuming that it is a true charitable trust, as one intended for the benefit of the public, still it does not fall within the classification of such trusts found in section 12 of the Personal Property Law and section 113 of the Real Property Law. Appellants' argument on this score is that, since it is apparent that the classification under which it normally would be included must be educational, the trust must fail because, conceding that it contemplates the erection and maintenance of an art museum for the use of the public, such an art museum, without provision for instruction in art, is not one for an educational purpose. Whether or not the erection and maintenance of an art museum can be classified as for an educational purpose, even though there is no provision for instruction in art, depends entirely upon the interpretation placed upon the words " education " and " educational ". In a general sense " education " is the development of the whole nature of man, physical, intellectual and moral, through interaction with every phase of his environment. In a narrower sense " education " means the development of the powers or capacities of the mind through special processes of training. It is undoubtedly true that for a long time the popular conception was one which limited education to the narrow one of instruction. However bearing in mind that concededly the attitude of the courts not only of this State but of the whole country, has become more and more liberal in the construction of trusts which are intended for the public good, it is only fair to expect the same liberal attitude in construing, insofar as such charitable trusts are concerned, the term " education ". In *Richardson* v. *Essex Institute* (208 Mass. 311) there was considered a trust created for the public, which included a house containing in it furniture to a considerable extent of the class known as antique. The court found that the house and its contents were of educational interest and value as a kind of museum. In the opinion at page 318 is the following:

" The house itself and its contents, it is found, have an educational value and interest as a kind of a museum. There is no limit to the way in which instruction may be given or useful information may be imparted, and no rule can be laid down for all cases as to what shall or shall not be regarded as educational in the sense in which that word is used in connection with public charities. We cannot say that the maintenance of the house and its contents as a kind of museum open to free public admission would not have such educational value as to constitute it a public charity, though if the case stood on that alone we should regard it as open to more question." It must be borne in mind, in considering the last sentence quoted, that this decision was in 1911. Since that date the liberal construction of such trusts has steadily broadened.

Again in *R. I. Hospital Trust Co.* v. *Benedict* (41 R. I. 143) the Supreme Court of Rhode Island passed upon a trust created by a will which gave $75,000 to be expended for the erection of a monument, intended to and illustrating music, to be designed and executed so as to at once instruct and adorn. There, such a trust was held to be one for an educational purpose, the court, in substance, saying that the intent in the testatrix' mind was to stimulate interest in music, to further the desire for its better understanding, and to lead the people to share in its refining and ennobling influence, and insofar as it might accomplish those objects the gift was one for educational purposes. On page 148 of the above decision the court cites *Sargent* v. *Cornish* (54 N. H. 18, 23) which construed a gift, the income from which was to buy and display United States flags. It quotes from the opinion therein as follows: " The intention of the testator seems to have been ' to educate the rising generation of Cornish to patriotic impulses.' * * * Educational purposes * * * are * * * not merely the means of instruction in grammar, or mathematics, or the arts and sciences, but all that series of instruction and discipline which is intended to enlighten the understanding, correct the temper, purify the heart, elevate the affections, and to inculcate generous and patriotic sentiments, and to form the manners and habits of rising generations, and so fit them for usefulness in their future stations. And the means of education are not solely books and printed rules and maxims, but representations and symbols and pageantry, it may be."

In *Tarver* v. *Weaver* (221 Ala. 663) the will devised property in trust to the Dallas Art League of Selma, Alabama, to

further and foster the art spirit in Selma, Alabama, and to provide a place for the exhibition of works of art. The court upheld this as a charitable trust, saying, " Bequests to establish and maintain art galleries as a public benefit have been sustained as charities."

Those decisions above quoted are in keeping with the text-book authorities. (14 C. J. S., Charities, § 15, pp. 446, 447; 2 Bogert on Trusts, § 374, p. 1172; Restatement of the Law of Trusts, § 370; 3 Scott on Trusts, § 370.)

*Matter of Mergentime* (129 App. Div. 367, affd. 195 N. Y. 572 on the opinion of the Appellate Division) and *Matter of Arnot* (71 Misc. 390, affd. 145 App. Div. 708) are both decisions in which the opinions, when fairly read, indicate that teaching and instruction are not essential in order to make the objects of the charity an educational one. There was no provision in the *Arnot* will for instruction.

Insofar as the instant case is concerned, to take the provincial view of the word " education ", that it must necessarily include instruction by teaching or by providing a reference library for study, would be a backward step, and not in accord with the liberal attitude already evidenced by the courts in the construction of gifts to the public, such as is here considered. As well stated in *Richardson* v. *Essex Institute* (208 Mass. 311, 318, *supra*) : " There is no limit to the way in which instruction may be given ". No one can gainsay that the broadcasting of symphony concerts during the past few years has stimulated the interest of thousands in music, and from the mere listening to these concerts thousands have learned to differentiate the poor and mediocre in music from the best. To that extent, at least, such concerts have had an educational value. The same would apply to the exhibition in a museum of art of objects of art created by the great masters. Taking that liberal view of the word " educational ", then the trust set up in the seventeenth clause of the will of the testatrix was a public charity for an educational end. Nor would the fact that Miss Everson may have deprecated the idea of instructing immature children in art in the Museum itself, militate against such a holding.

The trust is not invalid because the trust property may be turned over to a corporation organized by the trustees for the purpose of administering it. This is not an unusual provision. It is one which has had the approval of the courts of this State. (*Matter of Robinson*, 203 N. Y. 380, 389; *Matter of Potts*, 205 App. Div. 147, affd. 236 N. Y. 658.) Under the terms of this

will the trustee is not required to organize a corporation, but may do so.

Nor, again, is there any invalidity because of the permission granted to the trustee to turn over the property to any corporation or association organized for a like purpose, on such conditions as the trustee may deem proper, provided said trustee is assured that the purpose for which such corporation or association is organized is substantially the same as herein intended. It is a mere permission given to the trustee. This provision is one which was designed to permit the carrying out of the testatrix' intention in establishing a public charitable trust for educational use in the city of Syracuse, in a manner so that the public will secure the greatest benefit. It may well develop that with the funds at its disposal the trustee may find that such funds will be more effective in carrying out the testatrix' intention if they are joined with other existing similar trusts or turned over to an educational corporation performing a like service to the citizens of Syracuse. The clause is so worded that under no reasonable construction of it could one reach the conclusion that the testatrix had in mind that the trustee might turn it over to some corporation or association of a private or noncharitable nature.

The suggestion that there is no one to enforce this trust is without merit. The Attorney-General of the State of New York not only has authority, but is mandated so to do. (Personal Property Law, § 12, subd. 3; Real Property Law, § 113, subd. 3.) As a matter of fact, as already noted, the Attorney-General applied to this court and was granted leave to intervene in this very proceeding. He filed a brief seeking to uphold the validity of the trust.

The decree of the Surrogate should be affirmed.

All concur. Present — CUNNINGHAM, P. J., TAYLOR, DOWLING, HARRIS and LARKIN, JJ.

Decree affirmed, with costs to each party filing a brief, payable out of the estate. [See 269 App. Div. 727.]