550 A.2d 657

**FRIENDS SCHOOL**

v.

**SUPERVISOR OF ASSESSMENTS OF BALTIMORE CITY.**

No. 85, Sept. Term, 1986.

Court of Appeals of Maryland.

Nov. 30, 1988.

T. Scott Basik (Charles C. Shelton and Semmes, Bowen & Semmes, on the brief), Baltimore, for appellant.

Jane E. Pilliod, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kaye Brooks Bushel and Andrew H. Baida, Asst. Attys. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH * and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Court of Appeals of Maryland (retired), Specially Assigned.

McAULIFFE, Judge.

The property tax status of a building located on the campus of a nonprofit educational organization has thus far produced decisions at two administrative levels and two court levels. The Property Tax Review Board of Baltimore City and the Maryland Tax Court held that the residence of the building superintendent on the campus of Friends School does not meet the statutory requirements for exemption from real property taxes. On appeal, the Circuit Court for Baltimore City held that the Tax Court had applied an incorrect legal standard and reversed, directing the Tax Court to grant the exemption. On further appeal, the Court of Special Appeals agreed that the Tax Court had applied an incorrect standard, but held that the application of the correct standard would necessarily result in denial of the exemption. *Supervisor v. Friends School*, 67 Md.App. 508, 508 A.2d 514 (1986). We agree with both lower courts that the Tax Court applied the wrong standard, but we shall direct the remand of the case to the Tax Court for that agency's determination of the question of exemption, utilizing the correct legal standard.

The building superintendent's residence was planned and built as an integral part of the Friends School campus in 1947. According to the uncontroverted evidence offered by Friends School, the residence is located so that its occupant has a clear view of most of the school buildings. The home is equipped with a school phone for communication with the other school buildings, and with spot lights and a portable spot light system for use by the superintendent in campus surveillance. Other school buildings are equipped with a system of flashing lights designed to indicate the existence and nature of problems within the buildings, and these signal lights are visible to the occupant of the superintendent's home. As a condition of employment, the superintendent is required to reside in this home. The superintendent

is charged with maintenance of all buildings, and is expected to make regular inspections of the buildings to ensure that the heating systems are functioning and that there are no other mechanical problems. The superintendent is expected to patrol the campus from time to time in a pick-up truck furnished by the school, to provide security for the buildings and to remove trespassers from the campus. The superintendent is also responsible for prompt snow removal on campus.

The business manager of Friends School testified that the proper maintenance of the physical plant was an important component in carrying out the educational function of the school. He opined that the presence of the superintendent on campus as a resident was "essential" to the proper operation of the school, but conceded that the various functions of a resident superintendent could be accomplished by others, albeit in a less efficient and more expensive manner.

The statute which governed the exemption of property of a qualifying educational institution at the time this controversy arose was codified at Article 81, § 9, Maryland Code (1957, 1980 Repl. Vol.).[1] Section 9(e) granted an exemption for

[p]roperty owned by ... any nonprofit ... educational ... institutions or organizations ... when any of such property ... is actually used exclusively for and necessary for ... educational purposes (including athletic programs and activities of an educational institution) in the promotion of the general public welfare of the people of the State.

The parties agree that Friends School is a qualifying educational institution. They disagree, however, on whether

---

**1.** Section 9 of Art. 81 has since been amended, without apparent substantive change, and is now codified at § 7–202 of the Tax–Property Article, Md. Code (1986). Hereinafter, all references to statutory sections shall be to Art. 81 of the Md. Code as it existed at the time of this assessment for the 1983–84 tax year.

this particular campus building is "actually used exclusively for and necessary for ... educational purposes."

■ This building was granted an exemption from the time of its construction in 1947 until the assessment in question for the 1983–84 tax year. In denying the exemption at that time, the supervisor of assessments relied in part upon a change in the language of the exemption statute effected in 1972. Prior to the 1972 change, the exemption was granted for

> [b]uildings, furniture, equipment and libraries owned and used exclusively by educational ... institutions ... and the ground ... appurtenant thereto, and necessary for the respective uses thereof. Md.Code (1957, 1969 Repl. Vol.) Art. 81, § 9(8).

As we noted in *Supervisor v. Trs., Bosley Meth. Ch.*, 293 Md. 208, 217, 443 A.2d 91 (1982), the 1972 change was the product of the recommendation of the Maryland Legislative Counsel Committee on Taxation and Fiscal Matters, and the intent and effect of the change was not only to revise and rearrange various provisions for increased clarity, but also to narrow the range of exempt property. Petitioner concedes that the exemption of § 9(e) was narrowed by the change. It does not concede that the change adversely affected the tax status of this building.

In denying the exemption, the supervisor also relied upon, and the Tax Court found "controlling," our decision in *Supervisor v. Trs., Bosley Meth. Ch., supra.* In *Bosley*, we held that a caretaker's residence owned by a religious organization was not entitled to an exemption. Although certain of the facts of *Bosley* are similar to those of the case before us, the criteria for exemption in the two cases are not the same. *Bosley* involved § 9(c), which dealt with the property of religious groups. The case before us involves § 9(e), which dealt with the property of charitable, benevolent, and educational organizations.

Section 9(c), upon which *Bosley* turned, granted an exemption for

[p]roperty owned by a religious group or organization and actually used exclusively for public religious worship, including parsonages and convents....

We held that a caretaker's home, in which no public worship actually took place, could not qualify as a property "used for public religious worship."

■ By contrast, § 9(e), upon which this case turns, does not require that educational activities take place on the property for which the exemption is sought. It requires, rather, that the property is used for, and necessary for, educational purposes. Use for "educational purposes" is a broader concept than use for "public religious worship." Moreover, the "necessary for" language upon which earlier and more liberal exemptions were based, and which we noted in *Bosley* had been omitted from § 9(c), was retained in § 9(e). The Tax Court erred in its interpretation of the law when it found that the changes made in § 9(e) were "virtually identical" to those made in § 9(c), and in requiring proof of academic activities on the property as an absolute prerequisite to the grant of an exemption.

■ As we noted earlier, the circuit court and the Court of Special Appeals similarly found that the Tax Court erred in its determination of the appropriate legal standard. Each court then proceeded to apply the correct legal standard to the facts of record, and to reach a conclusion concerning the tax status of the property. In so doing, we think each court erred, not because of the conclusions reached, or the fact that each court reached a different conclusion, but because the application of the law to the facts of this case involves an exercise of judgment that must first be made by the administrative agency charged with that responsibility.

We are not to be understood as holding that a reviewing court can never reverse an administrative agency on a matter of law and then proceed to determine the outcome of the case by applying the proper law to the facts. We have done so. In *Supervisor v. Chase Associates*, 306 Md. 568,

510 A.2d 568 (1986), for example, we held that the Tax Court incorrectly interpreted the law when it held that the establishment of an apartment building constituted a change in the use of the property within the meaning of the statute dealing with permissible intervals of reassessment. Because the sole possible statutory ground for reassessment during an existing triennial cycle was a change in the use of the property, and the only possibility for change of use advanced by the supervisor of assessments was the imposition of the condominium regime, there was nothing left to decide when we resolved that question of law. There were no contested facts, no varying inferences that might have been drawn from those facts, and no room for the exercise of judgment in the application of the law to the facts. Reasonable persons could not have differed concerning the outcome of the case, and we therefore upheld the outright reversal of the Tax Court. We have made similar dispositions in other cases. *See, e.g., Supervisor v. Trs., Meth. Bosley Ch., supra; Supervisor of Assess. v. Carroll,* 298 Md. 311, 469 A.2d 858 (1984); *Comptroller v. Mandel Re-election Com.,* 280 Md. 575, 374 A.2d 1130 (1977); and *Md. State Fair v. Supervisor,* 225 Md. 574, 172 A.2d 132 (1961).

When, however, we have determined that the agency has made an error of law, but that there is a need for additional fact-finding, or that different inferences may be drawn from established facts, or that judgment must be exercised in the application of the law to the facts, we have reversed the decision because of the error, but remanded the case for further proceedings before the agency.[2] *See, e.g., Wash-*

---

**2.** When the agency has correctly interpreted the law, a deferential standard of review is applied by the courts to the agency's findings of fact, drawing of inferences, and application of the law to the facts. In those cases, a reviewing court will affirm when there is substantial evidence of record to support the agency decision. *Supervisor v. Asbury Methodist Home,* 313 Md. 614, 625–27, 547 A.2d 190 (1988); *Supervisor v. Group Health Ass'n,* 308 Md. 151, 156–60, 517 A.2d 1076 (1986); *Bd. of Educ., Mont. Co. v. Paynter,* 303 Md. 22, 39–40, 491 A.2d 1186 (1985); *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825,

*ington Nat'l Arena v. Comptroller,* 308 Md. 370, 519 A.2d 1277 (1987).

Even though the facts of this case are not disputed, we are persuaded that the inferences to be drawn from those facts and the initial exercise of judgment that is required with respect to the application of the law to those facts should be accomplished by the Tax Court. The correct legal standard, as we have pointed out, is whether the property is "actually used exclusively for and necessary for [3] ... educational purposes ... in the promotion of the general public welfare of the people of the State." Reasonable minds could differ in the conclusion to be reached by applying this test to the facts of this case, and that determination should be made by the Maryland Tax Court.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT

---

834–36, 490 A.2d 1296 (1985); *Balto. Lutheran High Sch. v. Emp. Sec. Adm.,* 302 Md. 649, 660–63, 490 A.2d 701 (1985); *Comptroller v. Haskin,* 298 Md. 681, 693–94, 472 A.2d 70 (1984). We have defined "substantial evidence" in this context as "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion," and we have made clear that in applying this substantial evidence test, a court should not substitute its judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken. *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512–13, 390 A.2d 1119 (1978).

**3.** The terms "actually used," "exclusively," and "necessary," as used in this and similar exemption provisions, have been the subject of prior interpretation by this Court. The word "actually" inserted before the word "used" evinces an intention that the use must be actual and present as opposed to anticipated or expected. *Supervisor v. Trs., Bosley Meth. Ch., supra,* 293 Md. at 215–16, 443 A.2d 91. The requirement of exclusive use may generally be satisfied by a showing that the property is used "primarily" for exemption purposes, with only incidental or occasional use for other purposes. *Id.,* at 215, n. 5, 443 A.2d 91; *Lodge #817 Order of Elks v. Supervisor,* 292 Md. 533, 541, 439 A.2d 591 (1982). "Necessary" means reasonably necessary for the charitable, benevolent, or educational purposes of the exempt organization, and has often been discussed in cases decided under the pre–1972 language of the property tax provisions of the Code. *See, e.g., Md. State Fair v. Supervisor,* 225 Md. 574, 586–89, 172 A.2d 132 (1961).

COURT OF BALTIMORE CITY WITH INSTRUCTIONS TO REVERSE THE ORDER OF THE MARYLAND TAX COURT AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS.  COSTS TO BE PAID BY RESPONDENT.