863 A.2d 969

**BALTIMORE SCIENCE FICTION SOCIETY, INC.**

v.

**STATE DEPARTMENT OF ASSESSMENT AND TAXATION.**

No. 49, Sept. Term, 2004.

Court of Appeals of Maryland.

Dec. 15, 2004.

Donald J. Arnold (Law Office of Donald J. Arnold, Bel Air, on brief), for appellant.

Jeffrey G. Comen, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

The issue before us is whether the Maryland Tax Court (which, despite its name, is an administrative agency and not a court) erred in finding that appellant, Baltimore Science Fiction Society, Inc. (BSFS), is entitled to an exemption from property taxes on a building it owns in Baltimore City. The Circuit Court for Baltimore City believed that the agency did err by applying an incorrect standard to determine whether the structure was being used for an educational purpose and, on that ground, reversed the agency decision. Because we shall conclude that the agency did not apply the wrong standard and that its factual findings were supported by substantial evidence, we shall reverse the judgment of the Circuit Court.

## BACKGROUND

Maryland Code, § 7–202(b) of the Tax–Property Article provides, in relevant part, that property is not subject to the State and local property tax if the property (1) "is necessary for and actually used exclusively for a charitable or educational purpose to promote the general welfare of the people of the State" and (2) is owned by "a nonprofit charitable, fraternal,

educational, or literary organization." Although the statute, read literally, requires that the property be used "exclusively" for a charitable or educational purpose, we have held that the requirement of exclusive use may be satisfied "by a showing that the property is used 'primarily' for exemption purposes, with only incidental or occasional use for other purposes." *Friends School v. Supervisor*, 314 Md. 194, 201, n. 3, 550 A.2d 657, 660, n. 3 (1988); *Supervisor v. Trustees of Bosley Meth. Ch.*, 293 Md. 208, 215, n. 5, 443 A.2d 91, 95, n. 5 (1982); *Lodge # 817 Trustees Benevolent & Protective Order of Elks v. Supervisor of Assessments of Wicomico County*, 292 Md. 533, 541, 439 A.2d 591, 595 (1982).

BSFS owns a two-story building at 3310–12 East Baltimore Street. It purchased the property in 1991 and, for ten years, paid property taxes on it. In August, 2001, BSFS applied to the State Department of Assessments and Taxation (SDAT) for an exemption pursuant to § 7–202. When SDAT denied the exemption and the Property Tax Assessment Appeals Board for Baltimore City affirmed that denial, BSFS appealed to the Tax Court, which reversed.

There was no dispute before the Tax Court, and it is conceded here, that BSFS qualifies as a literary organization and therefore meets the second, or ownership, prong of the statutory requirement. The issue is whether the property was "necessary for and actually used [primarily] for ... an educational purpose." In that regard, the Tax Court found as fact that:

(1) BSFS is a not-for-profit corporation organized "to promote the cultural, literary, and educational advancement of science fiction and fantasy in the community at large and to promote public goodwill toward the science fiction community." In carrying out that mission, BSFS, among other things, participates in a regional Baltimore Science Fiction Fantasy Conference, organizes writing contests, provides writing workshops and seminars, raises funds, and maintains a lending library.

(2) The property is used for all of the BSFS activities. None of it is used for any other activity. About 20–25% of the

building space is used for the storage of supplies and other items necessary for BSFS activities. The lending library takes up another 20–25% of the space. More than 30% is used for group functions, such as workshops and meetings. The building is open only on Saturday, Sunday, and Wednesday evenings, but during those times the public can visit the library or participate in other BSFS activities.

(3) The organization is run entirely by volunteers, who donate time and money. Members of BSFS pay annual dues. Non-members are allowed to use the library and attend all BSFS activities, but they do not usually visit the library or attend meetings.

These findings were based on substantial evidence, which explained in some greater detail the functions of BSFS. Testimony was presented that, in addition to bi-monthly meetings, BSFS sponsors a three-to-four day annual conference promoting science fiction literacy, a conference that attracts up to 2,500 people, including hard scientists from the Pentagon, from Johns Hopkins University, and from the agency that operates the Hubble Space Telescope. As part of that conference, BSFS sponsors the Compton Crook Award, given to an author for the best first novel in the science fiction, fantasy or horror genre.[1] BSFS also sponsors an annual Young Writer's Contest open to high school students, writing workshops, and readings and presentations by authors. The Young Writer's Contest produces 60 to 75 short stories from high school students around the State. The library contains about 6,000 books, but slightly less than half have been catalogued and are available for borrowing. The writer's workshops are held both at the property and wherever the Annual Conference is held, which is usually elsewhere. Book discussions are held at the property on Sunday afternoons. In addition to these

---

1. Compton Crook was a physics teacher in Baltimore County who wrote science fiction under the name of Stephen Tall and who was an early supporter of BSFS. The prize is a memorial to him. There was testimony that the award is well-recognized and highly regarded by its winners, and that there are over 300 references to it on the Internet.

events, BSFS participates in the annual city-wide Book Fair and Artscape events. Evidence was presented that the equipment and materials necessary for these various events are stored at the property, even for those events held elsewhere.

SDAT argued that the property did not qualify for the tax exemption because it was used primarily as a social or hobby club—that the building is open only on Saturday, Sunday, and Wednesday evening, that some of the organization's major activities are held off-site or occur only infrequently, that the library is mostly for the members, that the "function" space is for business and social meetings, and that the existence of BSFS and its activities are not well-known to the public. Its witness contended that, because the property was not being used for "systematic instruction," it was not being used for an educational purpose. In that regard, SDAT relied on its interpretation of this Court's decision in *Comptroller v. Maryland State Bar,* 314 Md. 655, 552 A.2d 1268 (1989), a case we shall discuss later.

The Tax Court regarded that criterion for defining "educational purpose" as too limited and confining and essentially "unworkable," and it adopted, instead, the view of the dissenting judges in *Ladies Literary Club v. City of Grand Rapids,* 409 Mich. 748, 298 N.W.2d 422, 427-30 (1980) that a more standard dictionary definition of "educational" was appropriate, a definition that encompassed cultural activities, such as museum trips and lectures. The Tax Court also noted that, although the statute requires that the property be primarily used for an exempt activity, it did not require that the property be frequently used for that activity. It found that, although the building is closed most of the week, "the property, when open, is exclusively used to promote BSFS's educational purpose." It distinguished the situation of property being used for an exempt purpose part of the time and rented out for non-exempt uses at other times, noting that no part of the BSFS building was used at any time for a non-exempt purpose. The storage area, it concluded, furthered the educational purposes. Despite its modest level of recognition in the community, BSFS had, the Tax Court found, contributed

to improving the general welfare of Marylanders by promoting literacy and attracting both new readers and new writers. Though recognizing that property tax exemptions are to be strictly construed (*see* Tax–Property Article, § 7–101), the Tax Court held that the plain meaning of the statute must control.

Aggrieved, SDAT sought judicial review in the Circuit Court for Baltimore City. That court took considerable umbrage at the Tax Court's rejection of a standard for defining "educational purpose" that it, too, believed was adopted by this Court in *Comptroller v. Maryland State Bar*. The Circuit Court offered its own view that "promoting science fiction is [not] what is deemed to be the operations of an educational institution" and, accordingly, reversed the Tax Court decision. BSFS appealed, and, because a major aspect of the case has significance beyond its particular facts, namely, determining the standard to be applied in defining what constitutes an "educational purpose" when considering the use to which a literary organization puts its property, we granted *certiorari* on our own initiative, before the appeal was concluded in the Court of Special Appeals.

SDAT insists that the governing standard is that which it regards as having been stated in *Maryland State Bar* and urges that, under that standard, property is not used for an "educational purpose" unless it is used for "systematic instruction" in a "branch of learning." SDAT contends that the Tax Court decision was properly reversed because (1) the agency refused to apply that standard, and (2) had it applied that standard, it would have been compelled to conclude that the BSFS property was not being used primarily for an educational purpose. BSFS notes that, in *Maryland State Bar*, we took that concept of "systematic instruction" from Black's Law Dictionary and points out that there are other dictionary definitions of "educational purpose" that are broader and more appropriate to use.

## DISCUSSION

As noted, § 7–202(b) contains two requirements for an exemption-a use requirement and an ownership requirement.

The property must be necessary for and actually used primarily for a "charitable *or educational* purpose to promote the general welfare of the people of the State," and it must be owned by an enumerated kind of entity, the relevant entity in this case being a "nonprofit charitable, fraternal, *educational,* or literary organization." (Emphasis added).

Two decisions of this Court from 1989 provide a proper context for examining the issue. In *Friends School v. Supervisor, supra,* 314 Md. 194, 550 A.2d 657, we considered whether the Tax Court had erred in concluding that a superintendent's residence on the campus of Friends School was not being used for an educational purpose because no educational activities were conducted there. There was no doubt that Friends School was an educational organization and that educational activities were conducted at the school. On the campus was a home in which the building superintendent, who was responsible for the proper maintenance of all buildings, as well as for security and snow removal, was required to live. The building was equipped so that the superintendent could monitor the campus and be able to respond to problems.

Although there was evidence that the proper maintenance of the plant was an important component in carrying out the educational function of the school, it was clear that no educational activities actually occurred in the home. For that reason, the Tax Court denied the exemption. We concluded that the Tax Court erred in applying that standard, and that, although the property for which the exemption is sought must be both necessary and used for an educational purpose, the statute did not require that educational activities take place on the particular property. We directed that the case be remanded to the Tax Court so it could apply the appropriate standard in its analysis of the underlying facts.

The second case was *Maryland State Bar, supra,* 314 Md. 655, 552 A.2d 1268. That was not a property tax exemption case but rather an attempt by the Maryland State Bar Association to obtain an exemption from the State sales tax. The statute provided an exemption from the payment of the sales

tax for "purchases of tangible personal property 'made for use in carrying on the work' of a 'nonprofit religious, charitable, or educational institution or organization.'" Unlike the *Friends School* case, the direct issue was not how any Bar Association property was being used but rather the nature of the organization itself-whether the Bar Association was a charitable or educational organization. In examining that issue, the Tax Court focused on the various activities carried on by the Association, in part by examining its internal structure and its budget. Special attention was given to the one committee particularly devoted to educational activities. The evidence showed that, until 1975, that committee—the Continuing Legal Education Committee—had a fairly large budget, but that, when the Maryland Institute for Continuing Professional Education of Lawyers (MICPEL) was created as a separate, independent entity, that Institute assumed most of the formal educational activities previously conducted by the Bar Association, albeit with substantial Bar Association assistance.

From all of the evidence, the Tax Court concluded that the Bar Association was essentially a professional organization operating for the benefit of its members and that the educational programs conducted by it were incidental to that purpose, and on that basis, it denied the exemption. The Circuit Court, on judicial review, made its own analysis of the evidence, found that the Association was, indeed, a charitable or educational organization, and reversed the Tax Court.

Our task was to articulate the appropriate standards to be used in defining a charitable and educational organization and to determine whether the Tax Court properly applied those standards. Looking to cases in other States, we adopted the view that, to be entitled to a sales tax exemption as a charitable organization, the entity must be "organized and operated to benefit an indefinite number of people" and that the service offered to eligible persons "must act to relieve the public of an obligation" it would otherwise have to those persons. Conversely, we noted that, if the dominant purpose of the organization is to benefit its members or a limited class of persons, it will not be regarded as a charitable organization,

even if the public derives some incidental benefit from its work. Using that approach, we held that the Tax Court, on the record before it, did not err in concluding that the Bar Association was not a charitable organization. *Id.* at 670–71, 552 A.2d at 1275.

We turned then to whether the Bar Association was an educational organization. The Tax Court, we said, seemed to deny the exemption based on "a *per se* determination that the MSBA's educational activities were but an incidental by-product of the Association's overall function to promote and protect the professional interests of its members." *Id.* at 672, 552 A.2d at 1276. We held that such a standard was too restrictive of the "educational organization" exemption in the statute and was not consistent with legislative intent. To be entitled to an exemption as an educational organization, the organization's focus must be "primarily educational." We noted that the 5th (1979) edition of *Black's Law Dictionary* defined " 'educational purposes' of an educational organization to *encompass* 'systematic instruction in any and all branches of learning from which a substantial public benefit is derived.' " *Id.* at 673, 552 A.2d at 1276, quoting from *Black's Law Dictionary* 461 (5th ed. 1979) (Emphasis added).

Manifestly, we said, the term "educational institution," as used in the sales tax statute, was not limited to schools, colleges, and universities, that, through its functioning parts, the Bar Association *did* provide a measure of systematic instruction to its members for the public good, that some of its educational pursuits were directed at the public and not just its members, and that it was therefore necessary to look at the organization as a whole to ascertain its primary or dominant purpose. We directed that the case be remanded to the Tax Court for it to make that analysis.[2]

---

**2.** It is of interest to note that, on remand, the Tax Court, applying the standard we adopted, found that the Bar Association constituted a charitable/educational organization and was exempt from paying the sales tax. *See Maryland State Bar Association v. Comptroller,* 1990 WL 135004 (Md.Tax.Ct.1990).

■ The Circuit Court seemed to view our decision in *Maryland State Bar* as defining "educational purpose" in a way that required systematic instruction in some branch of learning to be conducted at the property. That is not what the Court said, and it is not what the Court meant. The definition we cited from the 5th edition of *Black's Law Dictionary* stated in full:

> **Educational purposes.** Term as used in constitutional and statutory provisions exempting property so used from taxation, *includes* systematic instruction in any and all branches of learning from which a substantial public benefit is derived, and is not limited to such school properties as would relieve some substantial educational burden from the state. *McKee v. Evans*, 490 P.2d 1226, 1230. (Emphasis added).[3]

We note first that that definition, which has been dropped from later editions of *Black's Law Dictionary*,[4] did not purport to limit an educational purpose to systematic instruction, but simply pointed out that the term *includes* such instruction. The word "includes" is not a word of limitation but rather indicates that the item denoted is a constituent part of something larger. *See* 2nd edition of *Webster's New Universal Unabridged Dictionary* 923; *also* Maryland Code, Article 1, § 30 ("The words 'includes' or 'including' mean, unless the context requires otherwise, includes or including by way of illustration *and not by way of limitation.*") (Emphasis add-

---

**3.** The *McKee* case was cited more for the last statement. The question there was whether property owned by a Trust created through a collective bargaining agreement between electrical contractors and an electricians' union, used to train apprentice electricians, constituted a use for educational purposes. The Alaska court noted that some courts had limited an exemption for educational institutions to those in which the instructional program paralleled that offered in publicly supported educational institutions. The Alaska court found that too limiting and concluded that "educational purpose" included systematic instruction in *all* branches of learning from which a substantial public benefit is derived.

**4.** The definition taken from the 5th edition survived in the 6th (1990) edition but was dropped from the 7th (1999) edition, which constituted a major substantive revision of the dictionary, and does not appear in the 8th (2004) edition.

ed). That is what the Court obviously meant when it noted that the definition "encompass[ed]" systematic instruction. Had we believed that the requirement of an educational purpose could be satisfied only by systematic instruction, we would have been required to affirm the decision of the Tax Court based on the record before us, rather than remand the case for further consideration by the agency, for it was clear that the predominant purpose of the Bar Association was not to conduct systematic instruction.

As the *Friends School* and *Maryland State Bar* cases make clear, the adjective "educational" cannot be limited in the way posited by SDAT and decreed by the Circuit Court. Formal instruction may be the heart of education, but it is not the entire body. *Webster's* defines the verb "educate" as "to give knowledge or training to; train or develop the knowledge, skill, mind, or character of, especially by formal schooling or study; teach; instruct." *Webster's New Universal Unabridged Dictionary* 576 (2nd ed.1983). That allows for other methods of imparting knowledge and training. Courts have found that a museum may constitute an educational purpose. *See Georgia O'Keeffe Museum v. County of Santa Fe,* 133 N.M. 297, 62 P.3d 754 (2002); *In re Everson's Will,* 268 A.D. 425, 52 N.Y.S.2d 395 (N.Y.App.Div.1944). *See also State Tax Comm. v. Whitehall,* 214 Md. 316, 323, 135 A.2d 298, 301 (1957) (use of property by Foundation to conduct experiments in breeding of dairy cattle was for charitable and educational purpose; experiments "are comparable to research carried on under grants at universities and add to the dissemination and general store of scientific knowledge"); *Oregon Writer's Colony v. Dep't of Revenue,* 1996 WL 706994 (Or.Tax), 14 Or. Tax 69 (1996).

■ The Tax Court properly rejected the confining definition of "educational purpose" proposed by SDAT and adopted a more realistic concept. There is, necessarily, a certain affinity between "educational" and literary functions and activities. A library serves an educational purpose; writing workshops and readings and presentations by authors constitute an

educational purpose; encouraging high school students to compose literature is educational. As we have observed, the findings that the Tax Court made, which led it to conclude that the property was, in fact, being used for an educational purpose, were supported by substantial evidence, and its decision should therefore have been affirmed by the Circuit Court.[5]

JUDGMENT OF CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM ORDER OF MARYLAND TAX COURT; COSTS TO BE PAID BY APPELLEE.

---

**5.** In upholding the Tax Court's decision in this case, we do not dismiss out of hand SDAT's concern that the property was open only three days a week; nor do we embrace as a general proposition that a limited use of property for an exempt purpose is irrelevant. As noted, the Tax Court drew a distinction between property used for both exempt and non-exempt purposes and property being used solely for an exempt purpose but only part of the time. That distinction itself has some limits; to qualify for an exemption the property must be primarily used for an exempt purpose. In this case, given the overall use of the property in question, including the on-going storage of materials necessary to support the educational functions carried on by BSFS, the Tax Court in this case did not err in finding that the primary use was for an educational purpose.