BULLIS SCHOOL, INC. *v.* APPEAL TAX COURT ET AL.

[No. 156, October Term, 1954.]

*Decided May 16, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS and HENDERSON, JJ.

*Robert A. Wallace* and *Edward L. Foster* for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, Charles M. Irelan, County Attorney for Montgomery County,* and *Alfred H. Carter, Assistant County Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The question presented in this case is whether a non-profit private school is entitled to a tax exemption on farm property owned by it, up to the maximum of 100 acres, under Code (1951), Art. 81, Sec. 8(8). The section reads as follows: "The following shall be exempt from assessment and from State, county and city taxation in this State, each and all of which exemptions shall be strictly construed: * * * (8) Buildings, furniture, equipment and libraries of educational or literary institutions, no part of the net income of which inures to the benefit of any private shareholder or individual, and the ground, not exceeding (outside of any city) one hundred acres in area, appurtenant thereto, and necessary for the respective uses thereof." By Chapter 27, Acts of 1950, the maximum acreage had been increased from 40 acres to 100 acres. The appellant had been granted an exemption of 40 acres under the prior law. In 1953, it sought an exemption of an additional 60 acres, which was refused by the Appeal Tax Court of Montgomery County, and by the State Tax Commission on Appeal. The trial court affirmed the Tax Commission.

The appellant, a Maryland corporation, is conceded to be an educational institution satisfying the requirements of the statute. It is a boys' preparatory school providing courses equivalent to high school from the 9th through the 12th grades. It has from 190 to 250 students during the regular school year, of whom about three-fourths are boarders. It occupies a site in Silver Spring, Montgomery County, Maryland, consisting of about 6 acres. No question has ever been raised as to the propriety of its exemption, so far as the school buildings and grounds in Silver Spring are concerned. However, the appellant purchased in 1951 a farm known as Meadow Hall of approximately 285 acres located about 7 miles from Silver Spring, as a future site for the school. It lacked the necessary funds to build a new school and had no endowment. Apparently it was only able to purchase the farm because it had made a profitable sale of another tract of land held by it for pur-

poses of expansion. Mr. Bullis, the headmaster, was directed to reside on the farm and supervise farming operations. The school is now operating the farm, having about 200 acres in pasture and crops, a herd of 80 cattle and 180 hogs. All the crops are converted into feed for the cattle and hogs which in turn supply the school with all the pork and most of the beef consumed by its students. The only product sold commercially is a small surplus of milk, the proceeds being used to buy feed.

There was testimony to show that at least some of the farm buildings and curtilage were used for school purposes. The main building is used as a residence by the headmaster, and during the summer months 4 or 5 boys are tutored there in a classroom fitted up in one of the buildings. This is in line with one of the school objectives, the preparation of boys for entrance to the U. S. Military Academy or the Naval Academy. A square dance is held in the barn at Halloween, and two picnics are held on the grounds during the school year. A few boys perform farm labor during the summer months to earn money to pay their tuition. However, the school does not offer any instruction in agriculture, vocational training or the like. The school has received the benefit of an exemption of 34 acres, covering all the farm buildings and curtilage. It was stated in argument that this allowance was granted by the Tax Commission on another appeal and affirmed by the trial court, but the matter is not before us. It may well be that different considerations would apply, in view of the necessary, though limited, school uses of the residence and grounds. Cf. *Morning Cheer v. Co. Com'rs.*, 194 Md. 441, dealing with a similar exemption of a religious institution. The issue here is whether the fact that the entire produce of the farm is used to feed the school teachers and students justifies an exemption of 60 acres of farm land. There was testimony that this use helps to keep down the tuition charges and operating expenses of the school. It was admitted that the farm has always been operated at a loss, up to 6 or 7 thousand dollars

in the current year, but the hope was expressed that in a year or two it might carry itself. One of the reasons for seeking the exemption is to keep down the costs of operation.

There seems to be no Maryland case in point, and the cases in other jurisdictions are not in accord. The appellant relies strongly upon the cases of *Trustees of the Wesleyan Academy v. Inhabitants of Wilbraham*, 99 Mass. 599 (1868), and *People ex rel. Etc., v. Barber*, 49 N. Y. Sup. Ct. (42 Hun) 27 (1886), where farm lands owned and operated by schools were held exempt, the produce being used to feed the students. It may be noted, however, that the statutes in question were broader than the Maryland statute, and in both cases the schools were located in rural areas where supplies were not otherwise readily available. On the other hand, in *St. Bridget Convent Corporation v. Milford*, 87 Conn. 474, 88 A. 881, and in *Sisters of the Blessed Sacrament*, 38 Pa. Super. 640, exemptions based on the use of land for farm produce were denied. The case last cited was followed in *Mercersburg Col. v. Borough*, 53 Pa. Super. 388, and cited with approval in *Ogontz School Tax Exemption Case*, 361 Pa. 284, 306. It was distinguished in *United Presbyterian Women's Ass'n v. Butler County*, 167 A. 389 (Pa. Super.), where an exemption was allowed to an orphans' home conducted on a farm. See also *Malad Second Ward of the Church v. State Tax Com'n.*, 269 P. 2d 1077 (Idaho).

In the instant case it seems to be conceded that the mere fact that the land was purchased and is held for prospective use as a site for the school would not furnish ground for the exemption. The authorities generally seem to take the view that the use must be a present one, or at least in immediate prospect. See Note 2, A. L. R. 545, and *First Baptist Ch. of Pbgh., Aplnt., v. Pbgh. et al.*, 341 Pa. 568. It also appears to be conceded that if the farm had been leased to a tenant for cash rental that was devoted to school purposes, the exemption would not apply. Cf. *Balto. v. Grand Lodge of Masons*, 60 Md. 280, 283, *The Redemptorists v. Co.*

*Comm'rs.,* 50 Md. 449, 452, and *Co. Comm'rs. v. Sisters of St. Joseph,* 48 Md. 34, 42. The same principle would apply if the farm had been rented on shares, and the produce received in kind and consumed. See *People v. University of Illinois,* 192 N. E. 243 (Ill.), and *People v. Passavant Memorial Hospital,* 173 N. E. 770 (Ill.). We think there is no real distinction between a case where the produce is sold on the market, the proceeds being used for school purposes, and the instant case.

It is true, as the appellant contends, that the disposition of income or profit from the farm, if any, is not the statutory test, but whether the farm itself is necessary for the educational use. But in the instant case we think there is no showing of reasonable necessity. Obviously, the school could operate, as it did before the farm was purchased, on supplies obtainable in Silver Spring. We cannot escape the conclusion that the whole purpose of the investment in the farm is to hold it as a site for the building of a new school in the indefinite future. The farming scheme is at best, only a means of reducing the carrying charges of the property in the meantime. Since the farm is operated at a loss, it is difficult to see how that loss could be credited to the cost of food supplies that are covered by the tuition charges, or could be said to make possible the reduction of those charges. But the case would not be altered if it could be shown that the farm was operated at a profit and the produce was supplied to the students at cost, or less than cost. This fact would not convert the business use of the farm into an educational use. In this day and age, and in the circumstances of this case, we must agree with the trial judge that the farming operation is not a necessary use for educational purposes under the statute.

In view of our conclusion on this point we find it unnecessary to discuss the other point raised by the appellees as to whether the operation can be said to be appurtenant to the educational use in any event.

*Order affirmed, with costs.*