764 A.2d 821

## SUPERVISOR OF ASSESSMENTS OF BALTIMORE COUNTY

v.

## William Cardinal KEELER, Archbishop of Baltimore.

No. 85, Sept. Term, 1999.

Court of Appeals of Maryland.

Jan. 4, 2001.

David M. Lyon, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for appellant.

Saul E. Gilstein (David W. Kinkopf, Gallagher, Evelius & Jones, LLP, on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL and HARRELL, JJ.

BELL, Chief Judge.

The issue this case presents is whether 16.5 acres of a 27–acre parcel [1] should be included within the exemption for actual and exclusive religious worship, prescribed by Maryland Code (1985, 1994 Repl.Vol., 2000 Supp.) § 7–204 of the Tax

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Entitlement to an exemption for religious worship does not turn on the size of the parcel in question. Maryland Code (1985, 1994 Repl. Vol., 2000 Supp.) § 7–204 of the Tax Property Article, unlike § 7–202, which governs tax exemption for charitable and educational uses, contains no restriction on the amount of property that can qualify for the exemption. Section 7–202(c) caps at 100 acres the amount of real property "owned by an exempt organization and appurtenant to the premises of the exempt organization [that] is exempt from property tax, if the property is located outside of a municipal corporation or Baltimore City."

Property Article [2] when development on the entire parcel has been restricted to a 7.5 acre development envelope and the 16.5 acre parcel is zoned as open space. The Circuit Court for Baltimore County upheld the decisions of the Property Tax Assessment Appeals Board for Baltimore County and the Maryland Tax Court, both of which granted the exemption to the entire property, with the exception of one acre being used for residential purposes, reasoning that the property was to be viewed as a whole. We shall affirm.

In 1990, William Cardinal Keeler, Archbishop of Baltimore, the appellee, entered into an option to purchase the subject property for the Roman Catholic Church. The Church intended to construct a church on the property. Because the property was zoned R.C. 2, agricultural, which permitted a church only as a special exception, the purchase was made contingent upon the necessary zoning approvals being obtained. In 1992, the County Board of Appeals for Baltimore County ("CBA"), having taken testimony from Father Donellan, the Church Pastor, George Gavrelis, a land planner and civil engineer, Paul Solomon, a Department of Environmental Protection and Resource Management representative, Wes Guckert, a traffic engineer, Adam Gross, an architect, and members of the community and of the parish, determined that the requirements of Sections 502.1 [3] and 1A01.2.C [4] of the

---

**2.** Section 7–204, captioned *"Religious groups or organizations,"* provides:

Property that is owned by a religious group or organization is not subject to
 "property tax if the property is actually used exclusively for:
 "1) public religious worship;
 "2) a parsonage or convent; or
 "3) educational purposes."

**3.** Section 502.1 states that the special exception must not:

 "a. Be detrimental to the health, safety, or·general welfare of the locality involved;
 "b. Tend to create congestion in roads, streets or alleys therein;
 "c. Create a potential hazard from fire, panic or other dangers;
 "d. Tend to overcrowd land and cause undue concentration of population;

Baltimore County Zoning Regulations (BCZR) were met and, therefore, granted a special exception permitting the construction of a church on the parcel.

The CBA concluded that the property should be viewed "as a package," observing, "[w]e find the church size and scale to be appropriate on this tract of land and not out of character in relation to the surrounding community. We further find its architectural design to be in keeping with the site and surrounding area." It limited construction on the property, however, to a 7.5 acre development envelope except that "the construction of driveways, road improvement, storm water management, utilities or other such improvements" could take place outside of the development envelope. Other conditions were placed, by the CBA, on the grant of the special exception, including:

"(2) Occupancy of the subject caretaker's residence shall be limited to a church employee (s) and the employee (s) family members.

"(3) The Petitioner shall provide a landscape plan to the Office of Current Planning for approval by the Baltimore County Landscape Planner and the deputy Director of Planning and Zoning Department. Said landscape plan shall then be submitted to the Zoning Commissioner for final approval. The approval landscape plan shall become a permanent part of the record and file this matter.

\* \* \* \*

"e. Interfere with adequate provisions for schools, parks, water sewerage, transportation or other public requirements, conveniences, or improvements;

"f. Interfere with adequate light and air;

"g. Be inconsistent with the purposes of the property's zoning classification nor in any way inconsistent with the spirit and intent of these zoning Regulations; nor

"h. Be inconsistent with the impermeable surface and vegetative retention provisions of these zoning Regulations."

4. Section 1.AO1.2.C requires that the subject property as proposed is not detrimental to the health, safety or general welfare of the locality involved, particularly the agricultural uses in the vicinity.

"(5) The subject church shall have a maximum seating capacity for 650 individuals.

"(6) The Petitioner shall enter into legally enforceable document prior to issuance of building permits which shall restrict the areas north and south of the developed envelope as shown on Petitioner's Exhibit 1 to open space or agricultural use in perpetuity, unless the property or any portion of the property is rezoned to another zoning classification other than R.C. 2 [agricultural] . . . or the Master Plan for Baltimore County designates the property or any portion of the property for use other than agricultural preservation or the Director of the Department of Environmental Protection and Resource Management . . . finds, in writing, that the property or any portion of the property is no longer viable for agricultural use. The restriction shall take effect upon the commencement of construction of the proposed church. This restriction shall not preclude the construction of driveways, road improvements, storm water management, utilities or other such similar improvements within the restricted area.

"(7) Petitioner shall enter into a legally enforceable agreement which shall prohibit for a period of sixty (60) years from the date of this Order the construction of any buildings outside the building envelope so designated on Petitioner's Exhibit 1, so long as the subject site retains its R.C. zoning . . . ." [5]

5. Pursuant to this condition, the appellee executed a Declaration of Covenants, Conditions, and Restrictions, containing, in pertinent part, the following terms:

"(1) Those portions of the Property lying north and south of the area designated on the Plat as 'the Developed Envelope' shall be used only for open space or agricultural purposes in perpetuity unless the Property or any portion of the Property is rezoned to another zoning classification other than R.C. 2 . . . or unless the Master Plan for Baltimore County designates the Property or any Portion of the Property for use other than agricultural preservation or the Director of the Department of Environmental Protection and Resource Management (or any successor to that Department) finds, in writing, that the Property or any portion of the Property is no longer viable for agricultural use. This restriction shall not preclude construction of

The appellant, the Supervisor of Assessments of Baltimore County, determined that all property within the development envelope, except for one acre that was to be used as a caretaker's residence,[6] qualified for the religious worship exemption. Subsequently, it decided that the exemption should be expanded to include 3 acres, which were used for storm water management and a septic system, outside the envelope. The appellant denied the exemption to the remainder of the property, the 16.5 acres of open space outside the development envelope.

The appellee appealed the decision of the Supervisor of Assessments of Baltimore County to the Property Tax Assessment Appeals Board ("PTAAB")[7] for Baltimore County. Agreeing with the appellee, that Board extended the exemption to the 16.5 acres in dispute. That decision prompted the appellant's appeal to the Maryland Tax Court.

The Maryland Tax Court affirmed the decision of the PTAAB. In upholding the exemption, it indicated that its

driveways, road improvements, storm water management facilities, utilities or other similar improvements within the restricted area. "(2) No building shall be constructed on the Property outside the area designed on the Plat as the 'Developed Envelope' for sixty (60) years from November 20, 1992 so long as the Property retains its R.C. 2 [agriculture] zoning classification. . . .

"(3) Declarant for Himself, His Successors and The Catholic Community of Saint Francis Xavier Roman Catholic Congregation, Inc. agrees not to take any affirmative action to have the Property or any portion of the Property rezoned during the aforesaid sixty (60) year period. . . ."

6. Two homes existed on the property when it was purchased; one was to be converted to church offices, the other to a caretaker's residence.

7. PTTABs were created in each county by the General Assembly in 1972. Maryland Code (1985, 1994 Repl.Vol., 2000 Supp.) § 14–512(f)(1) of the Tax Property Article addresses appeals to the Maryland Tax Court from PTAAB decisions. It provides:

"(f) Appeals from property tax assessment appeal board; exhaustion of administrative remedies.—(1) Any taxpayer, a municipal corporation, the Attorney General, the Department, or the governing body of a county may appeal a determination made by property tax assessment appeal board under § 14–509(a) or (b) of this subtitle to the Maryland Tax Court."

decision was based on the CBA's grant of the special exception and the Declaration of Covenants, Conditions and Restrictions executed by the appellee. Noting its agreement with the CBA finding that the entire parcel is "a package," the Tax Court concluded that the requirement that the property be actively used for religious purposes was met. It was also persuaded that the CBA zoning order prevented the property from being used for anything other than church purposes for 60 years. Those restrictions, the court observed, effectively prohibited the Church from using the property to do anything other than provide a setting for the church as well as support worship activity in the church. Its reliance on the restrictions imposed by the zoning order was made manifest by its observation that if the Church were free to use the property for residential or commercial purposes or sell the property to third persons, then a denial of the exemption would have been appropriate.

In addition, the Tax Court was influenced by the testimony of Father Thomas Donellan, who stated that he viewed the entire site as relevant to supporting the religious work of the church, and that the parcel, including the open space, enhanced both the worship of the congregation and the beauty of the building. Characterizing the church building and the land on which it is built as "one fabric," Father Donellan concluded, the church would not be the same without the surrounding lands.

The appellant sought judicial review in the Circuit Court for Baltimore County. That court affirmed, holding that there was sufficient evidence in the record to uphold the Tax Court's decision that the land was used for religious purposes only. The Circuit Court, noting that the disputed area was available for anyone to walk, pray or contemplate the services, also expressed the view that § 7–204 does not require development of all of the property for which an exemption is sought in order that a valid active use be found.

We issued the writ of certiorari on our own motion to consider this important issue. Now we affirm the judgment of the Circuit Court.

## I.

The decision we review is that of the Maryland Tax Court, an administrative agency, see Ch. 757 of the Acts of 1959; *Read v. Supervisor of Assessments of Anne Arundel County*, 354 Md. 383, 391, 731 A.2d 868, 872 (1999); *Prince George's County v. Brown*, 334 Md. 650, 658 n. 1, 640 A.2d 1142, 1146 n. 1 (1994); *Shipp v. Bevard*, 291 Md. 590, 592, 435 A.2d 1114, 1115 (1981); *Shell Oil Co. v. Supervisor of Assessments of Prince George's County*, 276 Md. 36, 38, 343 A.2d 521, 522 (1975); *County Executive for Montgomery County v. Supervisor of Assessments of Montgomery County*, 275 Md. 392, 393, 340 A.2d 246, 247 (1975); *Fairchild Hiller v. Supervisor*, 267 Md. 519, 521, 298 A.2d 148, 149 (1973). Thus, pursuant to Md.Code (1988, 1997 Repl.Vol.), § 13–532(a) of the Tax General Article, the final order of the Tax Court is subject to judicial review as provided in §§ 10–222 and 10–223 of the State Government Article, governing the standard of review for decisions of administrative agencies.

> "Under this standard, a reviewing court is under no statutory constraints in reversing a Tax Court order which is premised solely upon an erroneous conclusion of law. *See, e.g., Supervisor of Assess. v. Carroll*, 298 Md. 311, 469 A.2d 858 (1984); *Comptroller v. Mandel Re-Election Com.*, 280 Md. 575, 374 A.2d 1130 (1977). On the other hand, where the Tax Court's decision is based on a factual determination, and there is no error of law, the reviewing court may not reverse the Tax Court's order if substantial evidence of record supports the agency's decision."

*Ramsay, Scarlett & Co. v. Comptroller of the Treasury*, 302 Md. 825, 834, 490 A.2d 1296, 1301 (1985).

Accordingly, in this case, we are limited to determining the legality of the decision of the Tax Court and whether there was "substantial evidence" in the record to support its findings and conclusions. *Comptroller of the Treasury v. Disclosure, Inc.*, 340 Md. 675, 683, 667 A.2d 910, 914 (1995); *State Dep't of Assessments and Taxation v. Consumer Programs*, 331 Md. 68, 73, 626 A.2d 360, 362 (1993); *see also CBS, Inc. v.*

*Comptroller of the Treasury,* 319 Md. 687, 697–98, 575 A.2d 324, 329 (1990); *Supervisor of Assessments of Montgomery County v. Group Health Ass'n, Inc.,* 308 Md. 151, 156, 517 A.2d 1076, 1078 (1986); *St. Leonard Shores Joint Venture v. Supervisor,* 307 Md. 441, 446, 514 A.2d 1215, 1218 (1986); *Ramsay,* 302 Md. at 838–39, 490 A.2d at 1302. In short, a reviewing court is authorized to reverse a decision of the Tax Court, if the agency "erroneously determines or erroneously applies the law." *State Department of Assessments and Taxation v. Consumer Programs,* 331 Md. 68, 72, 626 A.2d 360, 362 (*citing Roach v. Comptroller,* 327 Md. 438, 610 A.2d 754 (1992)); *see also Friends School v. Supervisor,* 314 Md. 194, 199, 550 A.2d 657, 659 (1988); *Supervisor of Assessments v. Asbury Methodist Home, Inc.,* 313 Md. 614, 626–628, 547 A.2d 190, 196 (1988); *Supervisor v. Chase Assoc.,* 306 Md. 568, 574, 510 A.2d 568, 571 (1986); *Ramsay,* 302 Md. at 834, 490 A.2d at 1301; *Macke Co. v. Comptroller,* 302 Md. 18, 22, 485 A.2d 254, 257 (1984).

 Where the substantial evidence test applies, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State Admin'r Bd. of Election Laws v. Billhimer,* 314 Md. 46, 58, 548 A.2d 819, 825 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989); *Supervisor v. Group Health Ass'n,* 308 Md. 151, 159, 517 A.2d 1076, 1080 (1986); *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 512–13, 390 A.2d 1119, 1123 (1978); *Snowden v. Mayor & City Council of Baltimore,* 224 Md. 443, 448, 168 A.2d 390, 392 (1961). Stated otherwise, the scope of review "is limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Bulluck,* 283 Md. at 512, 390 A.2d at 1123–24.

"[T]he test is a deferential one, requiring 'restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions,' *Asbury Methodist,* supra, 313 Md. at 625, 547 A.2d at 195; *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 309–10, 236 A.2d 282, 289 (1967). This deference applies not only to agency factfinding, but to

the drawing of inferences from the facts as well. *St. Leonard Shores Joint Ven. v. Supervisor,* 307 Md. 441, 447, 514 A.2d 1215, 1218 (1986); *Bulluck,* supra, 283 Md. at 513, 390 A.2d at 1124; *Snowden, supra,* 224 Md. at 448, 168 A.2d at 392."

*Billhimer,* 314 Md. at 58–59, 548 A.2d at 826. Moreover, the agency's decision is viewed in a light most favorable to the agency, since "decisions of administrative agencies are prima facie correct," *Bulluck,* 283 Md. at 513, 390 A.2d at 1124; *Hoyt v. Police Comm'r,* 279 Md. 74, 88–89, 367 A.2d 924, 932 (1977), and "carry with them the presumption of validity." *Bulluck; Dickinson–Tidewater, Inc. v. Supervisor,* 273 Md. 245, 256, 329 A.2d 18, 25 (1974); *Heaps v. Cobb,* 372, 378–79, 185 Md. 372, 45 A.2d 73, 76 (1945).

▮▮▮▮▮ Further, it is well settled that tax-exemption statutes are to be strictly construed in favor of the taxing authority. In *Chesapeake and Potomac Telephone Company of Maryland v. Comptroller of the Treasury, Retail Sales Tax Division,* 317 Md. 3, 11, 561 A.2d 1034, 1038 (1989) (*quoting Xerox Corp. v. Comptroller,* 290 Md. 126, 137, 428 A.2d 1208, 1214–15 (1981)), this Court stated the rule thusly:

"It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt must be resolved in favor of the State. In other words, 'to doubt an exemption is to deny it'.... [T]he State's taxing prerogative is never presumed to be relinquished and the abandonment of this power must be proved by the party asserting the exemption."

*See also, Supervisor of Assessments v. Bosley,* 293 Md. 208, 212, 443 A.2d 91, 93–94 (1982); *Hearst Corp. v. State Dept. of Assessments & Taxation,* 269 Md. 625, 643, 308 A.2d 679, 688–89 (1973); *Perdue v. State Dep't of Assessments Taxation,* 264 Md. 228, 233, 286 A.2d 165, 167–68 (1972); *Maryland State Fair v. Supervisor,* 225 Md. 574, 588, 172 A.2d 132, 139 (1961); *State Tax Comm'n v. Whitehall,* 214 Md. 316, 320, 135 A.2d

298, 300 (1957); *State Tax Comm'n v. Standard Oil Co.*, 181 Md. 637, 640, 31 A.2d 621, 622 (1943). On the other hand,

"[A] strict construction does not preclude a fair one, *Maryland State Fair v. Supervisor*, 225 Md. 574, 588, 172 A.2d 132, 139 (1961). Rather it still contemplates a construction that effectuates the legislative intent and objectives; 'it does not require that an unusual or unreasonable meaning be given to the words used in an exemption statute.' *Id.; Standard Oil Co.*, 181 Md. at 640, 31 A.2d at 622–623; *Whitehall*, 214 Md. at 320, 135 A.2d [at ]300. In other words, the rule of strict construction of tax exemptions does not call for strained or unreasonable construction to the extent of being adverse to the real legislative intention, for the judicial interpretation must always be in accordance with the actual meaning of the lawmaking power."

(citation omitted) *State Dep't of Assessments & Taxation v. Maryland–National Capital Park and Planning Comm'n*, 348 Md. 2, 17, 702 A.2d 690, 698 (1997). *See Disclosure, Inc.*, 340 Md. at 683, 667 A.2d at 914.

## II

### a.

■ The appellant's primary argument is that, while the 16.5 acres of open space may be necessary for the exempt use, *i.e.* supports it in some necessary way, because the requirement that they be kept as open space is a non-use, necessarily serving as a demarcation between the 16.5 acres and the 7.5 acre development envelope, they are not actually and exclusively used for the exempt purpose. The appellant cites, by way of contrast, *Friends School v. Supervisor of Assessments of Baltimore City*, 314 Md. 194, 550 A.2d 657 (1988), in which this Court extended the educational exemption to the superintendent's residence. That case was decided under Md.Code (1957, 1980 Repl.Vol.) Article 81, § 9, the predecessor to Md.Code (1957, 1969 Replacement Volume) § 7–202 of the

Tax–Property Article, now in effect.[8] Section 9(e) granted an exemption for

> "[p]roperty owned by . . . any nonprofit . . . educational . . . institutions or organizations . . . when any of such property . . . is actually used exclusively for and *necessary for* . . . educational purposes (including athletic programs and activities of an educational institution) in the promotion of the general public welfare of the people of the State."

(Emphasis added).

Acknowledging that "the zoning order and the covenants restricted the buildings to the development envelope and preserved open space on a majority of the property," appellant finds significance in the fact that no development would, or could, occur outside the development envelope, asserting, in particular

> "there was absolutely no evidence that any activity occurred on the 16.5 acres outside the development envelope, much less public religious worship. Rather, that property functioned only as an open space buffer. The restrictions imposed by the zoning order did not change the criteria for this exemption nor did it convert mandated non-development into active public worship."

The appellant relies on *Supervisor of Assessments of Baltimore County v. Trustees of Bosley Methodist Church Graveyard,* 293 Md. 208, 219–220, 443 A.2d 91, 96 (1982), in which this Court held that § 7–204 did not exempt ancillary property, in that case, a caretaker's residence, being used primarily as a residence. Noting the discussion in *Bosley* of the legislative history of the predecessor to § 7–204 and, in particular, the deletion from that statute of the phrase, "necessary for"

---

**8.** Maryland Code (1985, 1994 Repl.Vol., 2000 Supp.) § 7–202 of the Tax Property Article, as relevant, provides:

> "(b)(1) Except as provided in subsection (c), property is not subject to property tax if the property:
> (i) is necessary for and actually used exclusively for a charitable or educational purpose to promote the general welfare of the people of the State, including an activity or an athletic program of an educational institution . . ."

and the insertion of the word, "actually," see Chapter 350, Laws of 1972, the appellant argues that, pursuant to *Bosley,* the exemption extends only "to property where the exempt purpose was actually and presently being performed." The appellant also relies on *Bullis School, Inc. v. Appeal Tax Court,* 207 Md. 272, 276, 114 A.2d 41, 43 (1955) and *Ballard v. Supervisor of Assessments of Baltimore County,* 269 Md. 397, 404, 306 A.2d 506, 510 (1973).

### b.

The appellee sees the issue and the appropriate result quite differently. It argues that church property that has, and, indeed, by virtue of zoning restrictions and covenants, could have, no other use but to support the religious worship of the church is "actually used exclusively for public religious worship," entitling it to the religious exemption prescribed by § 7–204. In effect, the appellee equates the restrictions placed on its use of the 16.5 acres of open space with setback requirements. Moreover, the appellee believes that there is substantial evidence in the record to support the Tax Court's factual finding that the entire tract of land was being used, as a package, for religious worship, and that finding must be accorded appropriate deference.

### III

In *Bosley,* we set out the requirements for the religious exemption:

"[F]irst, the property must be 'owned by a religious group or organization;' second, the property must be used for 'public religious worship;' third, the exempt use must be 'actual;' and fourth, the exempt use must be 'exclusive.'"

293 Md. at 214, 443 A.2d at 94. The parties agree that with regard to the property to which the exemption has been determined to apply, the test has been met. There also is no dispute as to the ownership of the remainder of the property or the circumstances of its acquisition, along with the other property, for the Church and as a site for the location of a

church building. What is disputed is whether these 16.5 acres are used, actually and exclusively, for religious worship, whether their being a part of the church site—the lot on which the church is built, if you will—constitutes a sufficient use to justify the application of the exemption to them.

The Property Tax Assessment Appeals Board for Baltimore County, the Maryland Tax Court, and the Circuit Court for Baltimore County, have all resolved that dispute in the appellee's favor, concluding that the 16.5 acres are an essential part of the entire 27 acre parcel, that they must be viewed as a whole, an entire package or fabric. Only the appellant argues that the property cannot be viewed as a whole, but must be viewed with an eye to development potential or use. Indeed, the appellant argues that allowing the exemption for property required to be kept in an open space use, in effect a non-use, is a violation of § 7–204 because a non-use is, by definition, neither "actual" nor "exclusive" use and is not in furtherance of a church or religious worship purpose.

The appellant has not shown, however, that the 16.5 acres, whose use has been restricted to open space, is merely an appurtenance to the remainder of the tract,[9] that any non-church use of these 16.5 acres has occurred, that being restricted to open space use has a subordinate position or is a use different from the rest of the property. Nor does it appear that the 16.5 acres at issue are somehow divisible from the remaining exempt acreage.

In *Bosley*, the property in question was the church caretaker's home. The use of that residence was, to be sure, directly related to the church, but the residence itself was not available for public worship or integral to the primary purpose of the church. In that instance, the caretaker's residence was ancil-

---

**9.** "1. Something added to a more important thing; an appendage.... 3. A right, privilege, or property that is considered incident to the principal property for purposes such as passage of title." The American Heritage College Dictionary, Third Edition, 1997.

"*Appurtenance*, n. Something that belongs to or is attached to something else." Black's Law Dictionary, Seventh Edition, 1999.

lary or appurtenant to the church purpose in that upkeep and security of the church are not in and of themselves necessary to public worship. We held that property owned by·a religious group was not exempt, if used for a non-worship or religious purpose. 293 Md. at 214, 443 A.2d at 94. Here, unlike *Bosley*, the property in question is neither ancillary nor appurtenant to the remainder of the property any more than would be the front or back yard of a residential parcel. Indeed, the 16.5 acres are part of the land on which the church sits and that parcel is not subject to another, non-church use. The applicable covenants and zoning restrictions prohibit that property from being put to other than open space use; there simply can be no commercial, residential, or other non-worship related development on that property. The land, then, may be used only for church purposes, either in tangible, such as the construction of a prayer garden, or in non-tangible, *i.e.* reflective or spiritual, ways.

 The appellant fundamentally disagrees that any non-tangible uses can satisfy the "actual" and "exclusive" use requirements of § 7–204 and *Bosley*. Where, however, the use to which the exemption applies is itself intangible, and the zoning of the property in question restricts its development, requiring that it be kept in open space status, the lack of construction, development, or landscaping alone cannot determine whether the property is in "actual use." Indeed, the term, "use" is defined to include "benefit," "occupy," and "enjoy," terms which do not necessarily contemplate and certainly do not require physical construction or an explicit function.[10]

---

10. The American Heritage College Dictionary, Third Edition, .1997, reads:
> "*Use, v.* 1. To put into service or apply for a purpose. 2. To avail oneself of ... 4. To seek or achieve an end by means of; exploit.... 5. The quality of being suitable or adaptable to an end; usefulness. 6. A purpose for which something is used. 7. Gain or advantage; good ... *9. Law. a. Enjoyment of property, as by occupying or exercising it. b. The benefit or profit of lands and tenements ...*"

The appellee argues that, when property is purchased solely as a site on which to build a church, and zoning orders and the covenants required to be attached to the land restrict the use of the property, that some use other than that which the zoning and covenants dictate, *i.e.* a non-church, or religious worship related, use, must be shown before a differentiation of use may be found and the exemption applicable to the remainder of the property denied. We agree, as did the Property Tax Appeals Board of Baltimore County, the Maryland Tax Court, and the Circuit Court. The Tax Court explicitly found that the County Board of Appeals of Baltimore County structured the property as a package, and that the church was effectively prohibited from using the open space for any residential or commercial purpose for the next 60 years. On that basis, it upheld the findings of the Property Tax Assessment Appeals Board. On appeal, the Circuit Court upheld the exemptions because it could find no use which negated the religious purpose, for contemplation or enjoyment, of the land as it existed or, as an extension of the activities held within the physical structure of the church.

 The cases interpreting § 7–204 illustrate that a use other than a church use must be found before a property may be demarcated for tax exemption purposes. In *Ballard v. Supervisor of Assessments,* 269 Md. 397, 399, 306 A.2d 506, 507 (1973), the property at issue was a house which the taxpayer, a minister, used regularly three to four hours each day for the taxpayers' commercial purposes, including the operation of a commercial mail forwarding business, as the taxpayers' residence and for thrice-weekly services attended by the public. We held that the property was neither a house used primarily for public worship nor a parsonage used in connection therewith within the contemplation of a statute granting exemption from assessment and taxation for churches and parsonages. *Id.* at 403, 306 A.2d at 509. We reasoned:

"The fact that the property is used regularly three to four hours each day for appellants' commercial purposes supports the Tax Court's finding that it is not used primarily

for public worship. Further, the property is used as appellants' residence. When these two uses are weighed against the thrice-weekly services attended by the public, we agree with the Tax Court that the primary use of the property does not justify the exemption."

*Id.* at 404, 306 A.2d at 510. We also rejected the taxpayers' other arguments, namely that income from a commercial use that is applied to maintain the premises for public worship, should not disqualify the property from exemption and that taxpayer's sincere belief in the religious aspect of the use constitutes all of the uses that support it acts of public worship. *Id.* at 405, 306 A.2d at 510.

In *Bullis School v. Appeal Tax Court,* 207 Md. 272, 274–75, 114 A.2d 41, 42 (1955), a school purchased, for future expansion, a farm, which it used in the interim to raise livestock, thus supplying the faculty and students with beef and pork. We rejected the taxpayer's argument that property which was used to produce income to support an exempt use, in that case the education exemption, is thereby made exempt itself. *Id.* at 277, 114 A.2d at 43. *See also Morning Cheer Inc. v. Bd. of County Comm'rs,* 194 Md. 441, 447, 71 A.2d 255, 257 (1950) (religious non-profit group was entitled to exemption for all buildings and land used primarily as a religious retreat 10 weeks out of the year and left dormant for the remainder of the year).

A church is more than four walls built of stone, marble or concrete, as this Court has consistently so recognized. *See Morning Cheer,* 194 Md. at 447, 71 A.2d at 257. *See also Gibbons v. D.C.,* 116 U.S. 404, 407, 6 S.Ct. 427, 428, 29 L.Ed. 680, 681 (1886) (stating "we are not disposed to deny that grounds left open around a church, not merely to admit light and air, but also to add to its beauty and attractiveness, may, if not used or intended to be used for any other purpose, be exempt from taxation. . . ."").

In short, the cases involving interpretation of § 7–204 clearly involve property upon which a use other than, or in addition to, public worship occurs; they are concerned with exempted

land being put to uses other than the charitable, educational, or religious use which gave rise to the exemption. *See e.g., Bosley,* 293 Md. at 214, 443 A.2d at 95 (residence of a church caretaker not exempt under statute providing exemption property owned by religious group and exclusively used for public religious worship). That seems also to be the case in our sister jurisdictions. *See Foundation of Human Understanding v. Dep't of Revenue,* 301 Ore. 254, 267, 722 P.2d 1, 9 (1986) (caretaker's residence not exempt under statute providing exemption for "other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes" by religious organizations [11]); *Yehudi v. Assessor of Town of Ramapo,* 486 N.Y.S.2d 63, 63, 109 A.D.2d 744, 744 (1985) (residence used by part-time maintenance person ineligible for exemption as the primary use of the property is residential, not religious or educational); *Congregation B'Nai Jeshurun v. Bd. of Review,* 301 N.W.2d 755, 755–56 (1981) (residence of temple custodian not exempt [12], although use helpful to temple functions); *Kansas City Dist. Advisory Board v. Board of County Comm'rs,* 5 Kan.App.2d 538, 541, 620 P.2d 344, 347 (caretaker's residence not exempt under statute exempting all property actually used exclusively for educational or religious purposes as there was

---

**11.** Similar to § 7–204, the Oregon statute involved states:

"Upon compliance with ORS 307.162, the following property owned or being purchased by religious organizations shall be exempt from taxation:

"(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein. . . .

**12.** The statute in question, section 427.1(9) of the Code of 1979 of Iowa reads:

"The following classes of property shall not be taxed:

9. *Property of religious, literary, and charitable societies.* All grounds and buildings used or under construction by . . . religious institutions and societies solely for their appropriate objects, . . . not leased or otherwise used under construction with a view of pecuniary profit.

no evidence that it was used for church-related activities or in any way other than as a residence [13]).

The result we reach today has been followed by a number of our sister courts that have considered the issue. In *Assessors of Dover v. Dominican Fathers Province of St. Joseph*, 334 Mass. 530, 540–541, 137 N.E.2d 225, 231 (1956), in allowing a religious exemption [14] for a priory, which is a Dominican house similar to a monastery, the court observed as to property on which it was sited:

"The real estate owned by the taxpayer comprises seventy-eight and five-tenth acres. During most of the time only a relatively small portion of this area is used. But the area, which is wooded and pleasant, is used at times by its members of the priory for walks during recreational periods."

Similarly, in *Green Acre Baha'i Institute v. Eliot*, 150 Me. 350, 354, 110 A.2d 581, 584 (1954), the court allowed the religious exemption noting:

"Among the properties of the petitioner were two undeveloped woodland areas. There was evidence that those participating in the program regularly used these areas for walks, prayer, meditation, outdoor meetings and recreation. There was further evidence that certain locations therein had special significance for members of the faith arising out

---

13. Nearly identical to the wording of § 7–204, in K.S.A. 79–201, the specific property to be exempted is outlined as follows:

"First. All buildings used exclusively as places of public worship ... and used exclusively for the accommodation of ... religious meetings, together with the grounds owned thereby if not leased or otherwise used with a view to profit.

"Second. All the real property ... actually and regularly used exclusively for ... educational ... [or] religious purposes...."

14. In *Dominican Fathers*, the Court based its decision on its interpretation of G.L. (Ter. Ed.) c. 59, § 5, Third which states:

"Section 5. The following property and polls shall be exempt from taxation: ... Third, Personal property of literary, benevolent, charitable and scientific institutions ... incorporated in the commonwealth, the real estate owned and occupied by them or their officers for the purposes for which they are incorporated ..."

of a former visitation to the area by a leader of the faith. There was also evidence, of a hopeful, though not a clearly planned or definite intention, that the area might in the future be used for the enlargement and development of the institution's facilities. There was no suggestion of any present intention or purpose to hold the property as commercial timberland or for any other revenue use." [15]

*See also, Columbus v. Outreach for Christ, Inc.,* 241 Ga. 2, 243 S.E.2d 42 (Ga.1978) (property on which parishioners held regular prayer service and on which new church was being built was held exempt [16]); *Pickens County Bd. of Tax Assessors v. Atlanta Baptist Assoc., Inc.,* 191 Ga.App. 260, 381 S.E.2d 419 (Ga.Ct.App.1989) (partially improved lot used only for religious retreats held exempt from taxation [17]); *National Music Camp v. Green Lake Township,* 76 Mich.App. 608, 257 N.W.2d 188 (Mich.Ct.App.1977) (undeveloped land used as nature reserve and music camp held exempt [18]); *People ex rel.*

---

**15.** Dissimilar to the case *sub judice* where an exemption is being sought for a church per se, in *Green Acre Baha'i Institute,* the petitioner was a corporation organized by members of the Baha'i faith seeking an exemption for the property "necessary to carry out the educational, religious, charitable and benevolent purposes of the corporation...." The statute examined in the case, in pertinent part, reads:

> "Sec. 6. Exemptions. The following property and polls are exempt from taxation: * * * * * III. * * * * * the real and personal property of all benevolent and charitable institution incorporated by the state; * * * * but so much of the real estate of such corporations as is not occupied by them for their own purposes shall be taxed in the municipality in which it is situated...."

**16.** Broader than § 7–204, in *Columbus,* the court examined § 92–201 of the Georgia Laws, which provided exemptions for "places of religious worship."

**17:** *Pickens* was also decided based on OCGA § 48–5–41(a)(2) of the Georgia Laws, which also provided exemptions, broadly, for "places of religious worship."

**18.** Distinguishable from the case sub judice, in *National Music Camp,* the tax exemption was granted because the court concluded that the unused property owned by the camp helped to advance its overall educational purpose. The statute involved, M.S.A. 7.7, states:

"The following property shall be exempt from taxation:

*Pearsall v. Catholic Bishop*, 311 Ill. 11, 142 N.E. 520 (1924) (finding a tax-exempt status of an entire 465–acre tract of property used as a Catholic seminary, including a "garden's residence"[19]).

 We believe that the determination of whether a parcel of land is tax exempt does not turn on the property's level of development. Rather, under § 7–204 the exemption depends on the actual use of the property and whether that religious worship use is exclusive. In the present case, it does not follow that, merely because the appellee has been required, or decided, to leave a large portion of the church property undeveloped, the property is not being used—it clearly is as the site of the church—or that the congregation will not use the property in its natural state to enrich its worship experience.

Testimony from Father Donellan indicated that the religious use of the entire parcel would "enhance the worship of our people, and would enhance the beauty of our building, which is very important." Further, he stated that the church would not be the same without the surrounding land, "It's just one fabric. There's no—no berm or demarcation or anything such as that. It's a total—total piece."

The appellant's position, which it urges on this Court, is that a parcel of land consisting of more physical space than is minimally necessary to construct the main structure is, by default, subject to demarcation for taxing purposes. We do not agree for the reasons stated.

─────────

"Fourth, [s]uch real estate as shall be owned and occupied by library, benevolent, charitable, educational or scientific institutions ... "

19. Comparable in part to the wording of § 7–204, the statute in *People ex rel. Pearsall* which exempted the 465–acre tract of property at issue reads as follows:

"All property used exclusively for religious purposes, or used exclusively for school and religious purposes or for orphanages and not leased or otherwise used with a view to profit. (Cahill's Stat.1923, chap. 120, sec. 2, clause 2.)"

### IV.

Next, the appellant argues that the Tax Court decision is inconsistent with its own factual findings. This is so, the appellant asserts, because that court's decision is premised on the buffer use being the only use to which the 16.5 acres can be put. Noting that the Tax Court indicated quite clearly that its decision may have been different if the property, the 16.5 acres, could have been used for other purposes, it maintains that agricultural use is allowed and that

"Agricultural use is not religious worship any more than residential or commercial use is. The opinion specifically allowed agricultural use.... Consequently, this church can actually, not theoretically, farm this property next week, next year and for the next 60 years. Therefore, even using the Tax Court's logic, its own opinion does not support the conclusion that this property should be packaged with the public worship use and thereby meets the exemption criteria."

We are not convinced.

There simply is no doubt but that the Tax Court understood the legal and factual background of the case and appreciated their significance. Certainly, it was aware that the CBA decision did not prohibit agricultural use. Nevertheless, as the appellee points out, nothing in the case negates the conclusion "that the Tax Court viewed all the evidence before it and that the actual use of the property, and its significant development restrictions, led to the reasonable conclusion that the property was viewed as 'a package' or a unitary parcel presently supporting the public worship of the church."

Nor is there any merit to the argument that the use of the 16.5 acre tract is explicitly not related to the furtherance of public worship. As the County Board of Appeals for Baltimore County stated, the primary purpose of the non-developed land is to preserve the environmental aesthetics of the neighboring community and present the primary structure in a visually pleasing and understated manner. The development envelope is balanced by the open space, non-use area,

much as a garden, lawn, or yard balances many residential parcels.

## V.

Where a portion of a parcel of real property on which a church has been constructed is, by virtue of zoning and covenants restricted to open space use, thus prohibiting any other use, that does not serve automatically to demarcate the parcel, nor does it necessarily serve to infringe, usurp, or preempt the primary use of the property. In the case sub judice, the 16.5 acres provide a natural setting for the church and, thus, the religious worship use. As such, they are being actively used by the church for religious worship, as, by the way, the Order of the County Board of Appeals for Baltimore County directed. The decision that the 16.5 acre parcel is a part of a whole or entire package was found and reiterated by the Property Tax Assessment Appeals Board for Baltimore County, the Maryland Tax Court, and the Circuit Court for Baltimore County. Each such decision, and in particular that of the Tax Court, is supported by substantial evidence in the record. Accordingly, we affirm the judgment of the Circuit Court, which upheld the decision of the Tax Court.

JUDGMENT AFFIRMED, WITH COSTS.

RODOWSKY, WILNER and HARRELL, JJ., dissent.

WILNER, Judge, dissenting.

The Court today affirms a determination that 16.5 acres of vacant land, not used for any particular purpose and expressly reserved by deed exclusively for open field or agricultural use, is "actually used exclusively for public religious worship" merely because it is part of a larger parcel upon which stand a church and certain structures ancillary to the church. With respect, I dissent.

Perceiving the need for a new church in the Hunt Valley area of Baltimore County, respondent purchased a 27–acre tract located in an R.C. 2 (agricultural) zone. The tract was

improved by a two-story residence, a barn, a garage, and a tenant house but was otherwise open pasture land. A church use is permitted in an R.C. 2 zone only by special exception, which may be granted only upon the satisfaction of certain criteria set forth in the county zoning law. Among the showings that must be made in order to be granted a special exception are that the proposed use would not be detrimental to the general welfare of the locality and that it would not be inconsistent with the purposes of the property's zoning classification or with the spirit of the zoning regulations. There was opposition to the application for special exception from some of the neighbors, who expressed concern about those and other matters.

The county zoning authorities approved respondent's application for a special exception, and thus allowed the building of the church, upon certain representations made by respondent and subject to certain conditions and limitations. The order granting the special exception limited the actual building area for the church to less than one acre. It also limited the entire development area—including the existing improvements and a proposed 200 space parking lot—to a 7.5 acre envelope, and required respondent to enter into a legally enforceable agreement that would restrict the other 19.5–acres for open space and agricultural uses and prohibit the construction of any buildings on that open acreage for a period of 60 years. The only caveat to the restriction was the allowance of driveways, road improvement, storm water management, utilities, or similar kinds of improvements. Nothing was said about any walkways, trails, shrines, benches, or other structures being erected on the 19.5 acre tract. Nothing was said about parishioners or anyone else actively using the vacant land. It was intended to be a buffer, to shield the church and accessory buildings from neighboring property.

In support of its application for the special exception, respondent's witnesses represented that there would be two Sunday services, one at 9:30 a.m. and a second at 11:30 a.m., that Saturday services would occur in the afternoon, and that weekday services would be at noon. There would be no

activities or services during the morning or afternoon rush periods and no school or daycare facilities. It was represented that the 19.5 acres would remain in its existing condition with a permanent green cover and preserved as open space.[1]

In accordance with these restrictions, respondent constructed a church building on approximately one-third of an acre, converted the two existing houses to a caretaker's residence and church offices, and completed a parking area, all within the 7.5 acres in the interior of the parcel allowed for development. In July, 1996, respondent applied to the Supervisor of Assessments for an exemption of the entire 27–acre tract from State and local property tax assessment, alleging that the property was being used for a parish church and offices. The Supervisor for Baltimore County determined that 6.5 acres within the 7.5 acre development envelope and three acres within the adjacent 19.5–acre open space area that were used for storm water management and septic system were eligible for the religious worship exemption, but that the one acre within the development envelope used for the caretaker's residence and the remaining 16.5 acres of open space were not eligible for the exemption. The Property Tax Assessment Appeals Board, on respondent's appeal, reversed the Supervisor and granted the exemption for the entire area, less the one acre on which the caretaker's residence was situated, a decision affirmed, on the Supervisor's appeal, by the Maryland Tax Court and then by the Circuit Court for Baltimore County.

This Court further affirms those rulings, upon its conclusion that the Supervisor of Assessments "has not shown ... that the 16.5 acres, whose use has been restricted to open space, are merely an appurtenance to the remainder of the tract, that

---

1. Although for purposes of determining zoning compliance, testimonial representations of an applicant for a special exception may not be binding on the applicant unless incorporated in the express grant of the special exception (*see Cowles v. Montgomery County*, 123 Md.App. 426, 718 A.2d 678 (1998)), there is no inhibition to our consideration of respondent's representations regarding the use to be made of the property in the context of a tax assessment case.

any non-church use of these 16.5 acres has occurred, that being restricted to open space use has a subordinate position or is a use different from the rest of the property." That is not, in my view, the proper test to apply. The Tax Court applied the wrong standard, the Circuit Court applied the wrong standard, and, in my humble judgment, this Court has applied the wrong standard.

Prior to 1972, Maryland law provided an exemption from property tax assessment for "[h]ouses and buildings used exclusively for public worship, and the furniture contained therein, and any parsonage used in connection therewith, and the grounds appurtenant to such houses, buildings and parsonages and necessary for the respective uses thereof." Maryland Code (1957, 1969 Repl.Vol.) Art. 81, § 9(4). Under that formulation, land appurtenant to church buildings enjoyed an exemption, regardless of its use, if it was "necessary" for the church use. By 1970, the General Assembly had become concerned that the existing set of tax exemptions was unfairly depriving the State of revenue and, pursuant to a Joint Resolution, undertook a study of the matter. *See* discussion in *Supervisor v. Trustees Bosley Methodist Church*, 293 Md. 208, 217, 443 A.2d 91, 96 (1982). The result was a rewriting of § 9 of Art. 81 in 1972 that, in the case of property used for religious purposes, significantly changed the criteria for exemption. Under the 1972 law, an exemption was allowed only for "property owned by a religious group or organization *and actually used exclusively for public religious worship*, including parsonages and convents ..." Maryland Code (1957, 1980 Repl.Vol.) Art. 81, § 9(c) (emphasis added). The 1972 amendment carried forth the admonition included in the earlier statute that the exemption "shall be strictly construed." With but modest style changes made when § 9 of Article 81 was recodified as § 7–204 of the Tax Property Article in 1985, it is the 1972 version of the law that governs this case.

In *Bosley, supra,* 293 Md. 208, 218, 443 A.2d 91, 97, we observed that the "clear legislative design" behind the 1972 enactment was "to sweep away prior property tax exemption statutes and to restructure and broaden this State's property

tax base by narrowing the range of exempt property," and we gave effect to that change. *Bosley* dealt with two different determinations. In one, involving the Bosley Methodist Church, the Supervisor of Assessments had exempted four-and-a-half acres of church property encompassing the church building and graveyard but disallowed an exemption for a one-acre lot across the road from the church and graveyard on which sat the caretaker's residence. On evidence that the caretaker's residence was provided free by the church in order to ensure that someone was present on the property to provide security and to clean and maintain the property, the Tax Court held that the one-acre lot and home were also exempt. In the second case, involving St. John's United Church of Christ, the Supervisor took the same approach; an exemption was allowed for property containing the church, a parsonage, a meeting house, and various other buildings, but was denied for the caretaker's residence and the one-acre lot on which it sat. As in the *Bosley* case, the Tax Court held that the caretaker's property was also exempt, on the premise that the property was "necessary for" and "fairly incidental to" the main purpose of the church.

We reversed the Circuit Court's affirmance of those rulings, noting that, by virtue of the 1972 change in the law, the "necessary property" test applied under the earlier statute was "obsolete and inappropriate," and that the "plain statutory language ... exempts only church owned property that is 'actually used exclusively for public religious worship.'" *Bosley, supra*, 293 Md. at 212, 443 A.2d at 93. We explained: "It is now established Maryland law, both by legislative enactment and by prior decisions of this Court, that taxation is the rule with exemption the exception, and that statutes providing for tax exemption are to be strictly construed in favor of the State." *Id.* Under the 1972 law, we held, four requirements must be met: the property must be owned by a religious group or organization, it "must be used for 'public religious worship,'" the exempt use must be "actual," and that use must also be "exclusive." *Id.* at 214, 443 A.2d at 95. In the particular cases, we observed, the record disclosed "no public

religious worship was ever conducted on the two properties in question." Instead, the tax court exempted them because "it found these appurtenant properties to be necessary for the support of the exempt realty," which we concluded was error, for "the unambiguous language of [the statute], requiring that the property be 'actually used exclusively' for exempt purposes, does not authorize an exemption for such ancillary realty." *Id.* at 215, 443 A.2d at 95.

The Court cites *Bosley* and seems to understand that, for property to be exempt under § 7–204, it must be actually and exclusively used for public religious worship and not be merely ancillary, or even necessary, to such a use by contiguous property, but, in my judgment, the Court has ignored the essential effect of that requirement. There was no evidence presented before the Tax Court that the 16.5 acres of buffer land is used for any religious purpose. Indeed, there was no evidence that it was being used for any purpose other than that required by the zoning decision—as an undeveloped open space buffer between the church building and the neighboring property. The only evidence presented in this regard was that of the pastor, Father Donellan, who stated that the vacant land would "enhance[ ] the worship of our people and would enhance the beauty of our building." Father Donellan viewed the entire 27 acres as "just one fabric."

Coupling that statement with one in the zoning opinion that looked at the property "as a whole," the Court concludes that the Supervisor "has not shown . . . that the 16.5 acres, whose use has been restricted to open space, are merely an appurtenance to the remainder of the tract, that any non-church use of these 16.5 acres has occurred, that being restricted to open space has a subordinate position or is a use different from the rest of the property. Nor has the [Supervisor] convinced us that the 16.5 acres at issue are somehow divisible from the remaining exempt acreage." The import of the Court's decision is that, so long as some part of the land is actually used for public religious worship and the buffer land is not actually used for any other purpose, the whole tract (except for the caretaker's residence) is exempt. With respect, it seems to

me that such a conclusion stands the statute on its head and does precisely what the General Assembly intended to abrogate in 1972.

It is not the Supervisor's burden to convince us that the buffer land is being used for some other specific purpose. The burden is on the applicant for an exemption to prove his right to it, and, in this case, that requires an affirmative showing on respondent's part that the property in question is *actually* and *exclusively* being used for public religious worship. That is what the law requires. That is the plain, unambiguous, unmodified holding in *Bosley*. No such showing—nothing approaching such a showing—has been made in this case. It is undisputed that the 16.5 acres is *not* being actually and exclusively used for public religious worship, and that alone suffices to require denial of the exemption. If there was any evidence that parishioners traversed the buffer open space and engaged in outdoor public religious worship on it, I would agree with the Tax Court's ruling, but that is simply not the case. The fact that the buffer area enhances either the beauty of the church or the worshiping that occurs within it is irrelevant in this context. The law no longer exempts land because of its accessory or appurtenant use; if it is not itself actually used for public religious worship, it is not exempt.[2]

---

2. The Court cites several cases from other states that it regards as supportive of its position. A close reading of those cases reveals quite the opposite, however. In *Assessors of Dover v. Dominican Fathers Province of St. Joseph,* 334 Mass. 530, 137 N.E.2d 225, 231 (1956), an entire 78–acre tract was held exempt even though a small area of the tract was used for religious worship because the rest of the tract "which is wooded and pleasant, is used at times by members of the priory for walks during recreational periods." In *Green Acre Baha'i Institute v. Eliot,* 150 Me. 350, 110 A.2d 581, 584 (1954), there was evidence that members regularly used the two undeveloped areas "for walks, prayer, meditation, outdoor meetings and recreation." In *Pickens County Bd. of Tax Assessors v. Atlanta Baptist Assoc.,* 191 Ga.App. 260, 381 S.E.2d 419 (1989), 640 acres of land was held exempt as a place of worship where even the unimproved portion of the land was used for nature walks, outdoor Bible study, and meditation. *See,* in similar vein, *People ex rel. v. Catholic Bishop,* 311 Ill. 11, 142 N.E. 520 (1924); *Columbus v. Outreach for Christ, Inc.,* 241 Ga. 2, 243 S.E.2d 42 (1978). Apart from the fact that the statutory language in these cases was not the same as

Nor, in light of the actual zoning decision, can the broadened exemption be based on the "one property" approach. The zoning authorities, though recognizing that there was but one tract, did not regard it as a unitary whole. They limited the church building to less than one acre and total development to seven-and-a-half acres and identified on the parcel where that development could occur. They thus identified as well the 16.5-acre part that was to remain open and vacant for a period of 60 years. More important, the acreage in question was specifically identified, and thus separated from the remainder, in a recorded plat accompanying the restrictive deed executed and recorded by petitioner.

It may feel good to grant this exemption; no one wants to be the Grinch. The law, however—at least in my opinion—does not allow it.

Judges HARRELL and RODOWSKY have authorized me to state that they join in this dissent.

——————

facing us here, the evidence showed some actual exempt use of the open or wooded areas.